HILL MANUFACTURING COMPANY *vs.* PROVIDENCE AND NEW YORK STEAMSHIP COMPANY.

Suffolk.   March 19, 1877. — Aug. 31, 1878.   LORD & SOULE, JJ., absent.

In an action against a carrier for the loss of goods by fire, while the goods were in a steamship at the port of destination, there was evidence that the defendant, a corporation, had a lease of the pier at which the vessel was lying; that the pier for its whole length was covered by a building, owned by the corporation, with ends and sides of pine boards, and the interior of which was open throughout; that in one room was a stove, two feet from a partition, with a stove-pipe running through the ceiling, and with no protection around either stove or pipe ; that the fire was first seen coming from that room, and in a very few minutes afterwards caught and wholly consumed the steamship ; and that there was no sufficient watch upon the pier or the steamship.   *Held,* that the evidence would warrant a finding that the fire was caused by the neglect of the defendant.   *Held, also,* that the defendant had no ground of exception to instructions to the jury that the question was, not whether any of the servants of the corporation had neglected their duties, but whether the corporation itself had done so ; that the corporation was bound to furnish a suitable pier, and to use reasonable care to protect the property entrusted to it against fire ; and that if it failed to do so, and the loss was occasioned by such failure, the defendant was liable.

On the issue whether piers in New York are properly constructed, evidence that piers in Boston are similarly constructed may properly be excluded.

Proceedings in a federal court under the U. S. St. of March 3, 1851, exempting ship-owners from any liability for loss by fire, not caused by the'r own design and neglect, and limiting their liability for losses by other causes without their privity or knowledge to the amount or value of their interest in the ship and freight, and a final decree therein forever debarring all claimants in default from prosecuting their claims for losses, are no bar to an action in a state court, by one who has not submitted himself to the jurisdiction of the federal court, against a ship-owner for a loss by fire of certain goods through his neglect.

CONTRACT, with a count in tort, alleged to be for the same cause of action. Writ dated September 26, 1870. The count in tort alleged that the defendant, a corporation duly established by law, was a common carrier of goods and merchandise; that on May 22, 1868, it received at Providence, in the State of Rhode Island, from the plaintiff's agents, thirty cases of bleached cotton cloth, which it agreed with the plaintiff, for a reasonable compensation, to transport safely from Providence to the city of New York; that the thirty cases contained 39,691 yards of cloth, of the value of $7000; that the defendant so carelessly and negligently conducted itself that the cotton cloth, while being so transported by the defendant, was burned and injured by fire to the amount of $6000. The answer admitted that the defendant was a carrier; denied loss by negligence; set up a limitation of liability under the U. S. St. of March 3, 1851; and relied upon certain proceedings under that act, in the District Court of the United States for the Southern District of New York.

After the former decision, reported 113 Mass. 495, the case was tried in this court before *Lord*, J., who allowed a bill of exceptions in substance as follows:

It appeared that the cotton cloth in question was delivered at Lowell to the Boston & Lowell Railroad Company, to be conveyed by railroad to Providence, Rhode Island, and thence by the defendant's line of steamers to New York; that it was delivered in Providence to the defendant on May 23, 1868, and put on board their steamship the Oceanus; that the steamship sailed that afternoon, and arrived in New York the next morning, Sunday, but none of the cargo was discharged on that day; and that on Sunday afternoon a fire, which originated in one of the defendant's buildings on the pier at which the vessel was lying, burned the steamship to the water's edge and destroyed or damaged the cloth and nearly the whole of her other cargo, which belonged to various shippers; that portions of her cargo were afterwards discharged in a damaged condition, and no freight was earned or received by the defendant on the cargo, or any portion thereof; that the damage to the cargo by the fire largely exceeded the amount or value, immediately after the fire, of the defendant's interest in the steamer, and her freight then pending; that the defendant at the time of the fire held leases of the wharf property, and was owner of the buildings thereon.

The plaintiff contended that the fire was caused by the neglect and not by the design of the defendant; and offered evidence tending to show that at the time of the fire the pier was covered with a building between five hundred and six hundred feet long, that portion of it which covered the head of the pier being somewhat higher than the part which extended down the pier; that the sides of this building were made of pine boards painted on the outside, but not within, the roof being covered with a gravel roofing; and that the office, which was in a separate structure, standing by itself at the head of the pier within the main building with an open space between its roof and that of the main building, had wooden partitions, was occupied by the clerks employed in attending to the receipt and delivery of freight, and contained an iron stove standing about two feet from the partition, the stove-pipe running through the ceiling into a room over the office occupied by a stevedore in the employ of the defendant, and thence through the ceiling of the stevedore's room, through an open space between the top of this room and the roof of the main building, into the open air.

The plaintiff called a teamster as a witness, who testified to the foregoing details, and stated that he never saw any protection around the stove or stove-pipe, and that if there had been any such protection he should have seen it. He was not at the fire. Two firemen, called by plaintiff, testified that they received the alarm of fire at their station, and reached the premises in from three to five minutes before the fire showed itself, but when the main building was full of smoke, which apparently came from the office and the stevedore's room; that, in from three to five minutes after their arrival, they went upon the roof of the main building to cut holes through the roof, and were there from ten to twenty minutes, during which time the fire spread down the pier until it caught the steamship, which was rapidly consumed; that the steamship was not on fire when they went upon the roof first, and the fire did not catch her for some ten to twenty minutes thereafter; and that they saw no one upon the steamer except firemen, and no watchman upon the premises from the time of their arrival until the fire was extinguished; that there was no steam upon the steamship at the time of the fire, so that she could only be moved by hand; and that the wind was

blowing out of the dock, and the tide was ebbing, so that their natural tendency was to float the steamship away from t     pier. The plaintiff offered no evidence to show that there was any fire in the stove on May 24, or how the fire originated, except that the firemen testified that when they first went upon the roof, smoke was coming up out of or around the stove-pipe, they could not say which ; and, without offering any other evidence, rested its case.

The defendant thereupon asked the judge to rule that, upon the evidence offered, the plaintiff could not maintain its action, and that the defendant was entitled to a verdict. The judge refused so to rule, but ruled that the case must be submitted to the jury upon the question whether the defendant, under all the circumstances of the case, had exercised reasonable and proper care in keeping the property intrusted to its charge. To this ruling and refusal to rule the defendant excepted.

The defendant thereupon offered evidence tending to show that it was necessary for the proper conduct of its business as a common carrier, and for the proper protection of goods during their receipt and delivery, and while awaiting the orders of the consignees, that the pier should be covered with a building substantially like that burned ; that the buildings upon the pier were built about four years before the fire ; that they were very thoroughly built ; that the sides of the buildings were made of boards tongued and grooved so as to fit into each other, and the roof was so made that, when completed, it presented nothing but a surface of gravel ; (the plaintiff did not contend that the roof was of improper construction ;) that the interior of the building was open from one end to the other, so that a person standing at the head of the pier could see the whole length of the pier ; that the lower end and sides were closed, with openings at intervals corresponding with the gangways of the steamships, which could be shut when not needed for the receipt or discharge of cargo ; that within the main building at the head of the pier were two smaller buildings ; that the office was in one of these buildings, the partitions being constructed of boards planed and well finished; that the remainder of the building, adjoining the office and separated from it by a partition, was divided, by a floor in the middle, into two rooms, of which the lower, opening into

the main building, was used for the keeping of passengers' luggage, and the upper was the stevedore's room above alluded to, the ceiling of the stevedore's room being on the same plane as the ceiling of the office, and both covered by the same roof; that in the office was the stove above alluded to; that the pipe from this stove passed through the partition into a drum in the stevedore's room, and thence out through the roof; and that beneath the stove, between it and the partition, and between the stovepipe and the partition for the entire length of the former, zinc had been put as a protection; that the pipe passed through the partition through a double cylinder of tin, so arranged with holes as to allow a circulation of air between the two cylinders; that there was a similar protection where it passed through the roof, and that this was a sufficient protection against fire from the stove, and, although hot fires had been built in the stove for some years, there had never been any indication of undue heat to the partition, ceiling or roof; that there were on the pier four hydrants, connected by pipes with the main water-pipe in the street, each provided with sufficient hose, which were in good order on the day of the fire, and could be brought into use in one minute by one man; that on the day of the fire, the openings on the sides of the building over the pier were shut, except three which were open, one to afford an entrance to each of three steamships then lying at the pier, and that the entrances to the building from the street were closed; that there was on the wharf a regular watchman, who was there at the time of the fire, sitting inside the buildings where he could see the whole pier, which on that day was clear from freight; that the Oceanus was provided with all the means for extinguishing fire required by the laws of the United States, and had three pumps, two hand-pumps, one near the bow and another near the stern, and one steam-pump near the centre of the ship, each provided with a proper equipment of hose, which was kept actually connected with the hand-pumps, and was so connected at the time of the fire; that upon reaching her dock on the day of the fire, the fires under her boiler had been drawn, in order that the boilers might be cleaned; that this operation had been finished, and the hands were in the act of filling the boilers when the fire broke out that it was necessary for the safety of the vessel to clean the

boilers once a week; that it was the rule that this should be done on Sunday morning, and no fires could be lighted under the boilers until they had been fully filled again, without danger of an explosion; that during this operation the boat could not be moved by steam; that the full complement of the steamship was fifty-four men, including the officers, which were a captain, first and second mates, first and second engineers, first and second pilots, steward, and some minor officers; and that at the time of the fire, all were on board, except the captain and chief engineer, and were in various places on the vessel.

There was no evidence that any one was in command of the vessel at the time of the fire, unless it is to be inferred that the first mate was in command in the absence of the captain; nor that any special order had been given to keep watch on board, or that any regulations had been established in reference to the breaking out of fire on the ship or the wharf. But there was evidence that a watch was always kept on the ship, and that the fire was first discovered by some of the men on board, when it was confined to the stevedore's room, some thirty or forty feet from the stern of the ship; that thereupon the lines which held the steamship to the wharf were immediately cast off, the pumps manned, and a stream of water played upon the sides of the steamship, the capstan manned by all the men who could get hold of it, a line being attached from it to a post at the head of the pier; and that the fire spread so rapidly that the steamship could only be moved fifteen or twenty feet before the men were driven from her by the fire, the capstan being near the forward end of the vessel; the mate and others testifying that only twelve to fourteen minutes elapsed from the time the fire was first discovered in the stevedore's room until the men left the vessel. The evidence showed that everything was done by the men on board which could be done to save the vessel. Much evidence was introduced to show what was done, but the plaintiff did not contend that the officers and men in charge of the vessel were guilty of any negligence in failing to save her, or that she was not properly equipped with means for extinguishing fire. The assistant engineer testified that the fire went like a flash, and that the men were driven from the capstan in about six minutes from the time when he first saw the fire in the

stevedore's room, thirty-five or forty feet from the steamship. There was evidence that the fire, when first discovered, was in the stevedore's room and that the smoke and fire, when first seen by the officers of the steamship, were coming up out of or near the stove-pipe; and the defendant offered the evidence of witnesses, who examined the premises after the fire, with a view of ascertaining the cause of it, to the effect that the office in which the stove stood was not touched by the fire; that the stove and the stove-pipe through its entire length were undisturbed; that there was no sign of fire or scorching in the partitions, ceiling or roof, where the stove-pipe passed through, but that it and all its appurtenances remained after the fire as before; that there was a hole in the ceiling of the stevedore's room and the roof overhead, but that it was two or three feet from the stove-pipe; and that the fire apparently originated in the baggage room under the stevedore's room. There was no other evidence, except this, as to the cause or origin of the fire.

The defendant also introduced evidence tending to show that at the time of the fire all other steamship companies, whose routes ended in New York, had their piers covered; that every pier then covered in New York was covered with a wooden building; and that the building which covered the defendant's pier was in no way inferior in construction, size, material or other respects affecting its liability to burn, to the buildings upon the other piers in New York, but on the contrary was better.

The defendant also offered to show by various witnesses that, at the time of the fire, companies and persons engaged in the same business as the defendant and having routes with a terminus in Boston, used covered wharves at Boston, and covered them with wooden sheds of the same construction and character as that which covered the defendant's pier; and that there was no difference between the circumstances, including the danger of fire, under which such buildings were used in Boston, and the circumstances under which the defendant used its building. This evidence was offered for the purpose of showing the care exercised and precautions employed generally at the time of the fire by persons and corporations engaged in the same business and subject to the same responsibilities as the defendant. The judge excluded the evidence, and the defendant excepted.

The fire marshal of New York testified that the building on the pier operated like a horizontal chimney, and that when he arrived at the spot, which was from thirty-five to forty minutes after the bells gave the alarm, he found the part of the building on the pier on fire, with intense heat, and also the vessel.

There was no evidence that any regulations had been established by the defendant in reference to the use of the pumps on the steamer or the hydrants on the wharf in case of fire, or that the watchman had received any instructions as to his duties in case of fire, or any other than general instructions to watch the whole pier. The watchman was not called, nor was his absence accounted for. It appeared that he was no longer in the employ of the defendant, and had not been seen for several years, and there was no evidence to show that any of the defendant's agents or servants knew where he was. The mate and other officers of the steamship testified that the tide had very little force where the steamer lay, owing to the piers above, and that the wind and tide at the time of the fire would have had no appreciable effect in taking the steamship out of the dock.

The defendant put in evidence the record of proceedings upon the libel and petition of the defendant, filed on May 14, 1872, in the District Court of the United States for the Southern District of New York, under the U. S. St. of March 3, 1851, §§ 3, 4, and the 54th–57th Rules of Practice in Admiralty of the Supreme Court of the United States, claiming the benefit of the limitation of liability provided in the act of Congress. The record showed that the libel set forth the facts and circumstances ; that upon this libel the District Court caused an appraisement to be had of the amount of the defendant's interest in the steamship and in her freight for the voyage, and made an order for the giving of a stipulation, with sureties, for its payment into court whenever ordered ; that the defendant entered into a stipulation in conformity with the order, and a monition was issued against all persons claiming damages for the loss occasioned by the fire on board the steamship, citing them to appear before the court, and make proof of their claims, on or before October 15, 1872, and ordering public and other notice of the monition ; that this notice had been served on the plaintiff as well as on all other claimants ; that the court made an order upon the plaintiff and

the other claimants, which had been served, restraining the further prosecution of all and any suit or suits against the defendant in respect of any such claim or claims ; and that the court made a final decree by which all persons in default, by reason of their failure to prove their claims, were forever debarred from prosecuting such claims. It was admitted that the process and restraining order issued on the defendant's libel and petition were duly served on the plaintiff.

The defendant asked the judge to rule that, upon the whole evidence, the plaintiff could not maintain its action, and that the jury must find for the defendant ; but the judge refused so to rule.

The defendant then asked the judge to instruct the jury as follows : " 1. Under the proper construction of the act of Congress entitled 'An act to limit the liability of ship-owners, and for other purposes,' U. S. St. March 3, 1851, the libel and petition of the defendant, filed in the District Court of the United States for the Southern District of New York, and the proceedings had thereon, are a bar to the plaintiff's action. 2. Under the proper construction of said act of Congress, the plaintiff is precluded from maintaining its action by said proceedings in said District Court. 3. By the decree of said District Court, made upon said libel and petition, and the subsequent proceedings thereon, it has been adjudged, as between the parties to the present suit, that the fire which caused the damage for which the plaintiff seeks to recover, was not caused by the design or neglect of the defendant within the meaning of said act of Congress. 4. There is no evidence that said fire was caused by the design or neglect of the defendant within the true construction of the said act. 5. Under said act the defendant is not liable, unless the fire on board the Oceanus was occasioned by the design of the owners thereof, or their neglect in respect of the construction, equipment or manning of the vessel. 6. The neglect referred to in said act is a neglect in respect of the vessel herself, and not neglect in respect of any arrangements which may be made for the protection of cargo before it is put on board, or after it is taken out of the vessel. 7. It is not neglect of the owners of a vessel, within the meaning of said act, to permit her, upon her arrival in her port of destination, to be attached to a pier covered by a

shed, constructed in the manner usual and customary for such vessels in such port. 8. There is no evidence of neglect of the owners of the Oceanus, within the meaning of said act, in respect of the place where said vessel was attached. 9. There is no evidence in the case of neglect on the part of the owners of the Oceanus, within the meaning of said act, in respect of the construction or maintenance of the buildings at the head of the pier, or upon the pier itself. 10. If the fire originated in the buildings on the shore, and communicated to the steamer by the shed upon the pier, the defendant is not liable. 11. Unless the fire itself was originally caused by the neglect of the defendant, the defendant is not liable. 12. If the fire did not originate in the steamer Oceanus, the defendant is not liable."

The judge refused to give these instructions; but, after stating to the jury that the question before them was whether the fire which caused the damage complained of was occasioned by the neglect of the defendant, instructed them as follows: " It becomes necessary for you to inquire whether there was any negligence on the part of the defendant corporation ; not whether any of the servants of that corporation, while performing the duties which the corporation imposed upon them, have been guilty of misconduct or negligence, but whether the corporation itself has been guilty of any misconduct. The corporation is the owner, and the liability of the corporation is the exact liability of the owner. The corporation provides ships, docks, piers and places for the transaction of the business incident to its enterprise. Now, if there is a failure to do what is proper for the reasonably setting in motion and carrying on the business of the corporation, that is in law a neglect of the corporation. The case here rests upon the provision made by the corporation for the purpose of doing the business. It is like the case of a railroad company that is bound to furnish the railroad with a good roadbed, with a properly constructed road, with a suitable equipment, with a proper depot. A neglect to furnish either of these is a neglect of the corporation itself in providing means by which the business is properly to be done. Was the corporation guilty of neglect? The plaintiff contends that the arrangements made for carrying on its business were unsuitable and unsafe; in the first place, in having a structure so large, and of such combus-

tible material, thus placed by the side of the dock upon the pier and in having means in it for heating which were unsafely provided ; and, in addition, that the corporation had failed to make such proper regulations as it was their duty to make to provide against such a contingency as happened, which men of prudence should have anticipated. Whether it was guilty of neglect, is a question for you. The corporation was bound to act reasonably under all the circumstances of the case. The place where the property was, the circumstances surrounding it, whether a dense or a sparse population, whether easy or difficult of access for re moval in case of danger, the value of the property, are all elements for your consideration in determining whether the defendant did or did not use reasonable care to protect the property against fire. If it did not, and if, further, you are satisfied that the want of that reasonable care was what caused the destruction of the plaintiff's property, then the defendant is liable. The plaintiff must satisfy you of two propositions : that the defendant neglected the proper means, the reasonable and proper precautions, which should have been taken against fire ; and that by reason of that failure to take proper precautions against it, its property was destroyed. If it has satisfied you of both these propositions, your verdict must be for the plaintiff ; otherwise, for the defendant."

The jury returned a verdict for the plaintiff ; and the defendant alleged exceptions.

*M. Storey*, for the defendant.

*J. G. Abbott*, for the plaintiff.

GRAY, C. J. The plaintiff contended and the jury have found that the fire which destroyed the plaintiff's goods was caused by the neglect of the defendant corporation.

There was evidence tending to show that the defendant's pier was covered for its whole length by a building with ends and sides of pine boards, and the interior of which was open throughout, so as to operate, as the city marshal testified, like a horizontal chimney ; that in one room was a stove, two feet from a partition, with a stove-pipe running through the ceiling, and with no protection around either stove or pipe ; that the fire was first seen coming from that room, and, in a very few minutes afterwards, caught and wholly consumed the steamship and her

cargo; and that there was no sufficient watch upon the pier or the vessel.

There can be no reasonable doubt of the sufficiency of the evidence to warrant the verdict, and it was submitted to the jury with suitable instructions.

The testimony as to the structures on wharves in Boston might rightly be excluded by the presiding judge, as tending to raise collateral issues upon the question how far the circumstances of those cases corresponded to those of the case on trial.

The act of Congress of March 3, 1851, exempting ship-owners from any liability for loss by fire not caused by their own design or neglect, and limiting their liability for losses by other causes, without their privity or knowledge, to the amount or value of their interest in the ship and freight, does not diminish or in any way affect their liability at common law for injuries caused by their own neglect.

In § 1, which takes away the owners' liability for loss or damage to goods "by reason or by means of any fire happening to or on board the said ship or vessel, unless such fire is caused by the design or neglect of such owner or owners," the words "such fire" evidently refer to the previous words, "fire happening to or on board;" and if the neglect of the owners is the cause of the fire's breaking out on the ship, it is wholly immaterial whether and how the fire originated elsewhere.

The provisions of § 4 of the act of Congress, and the rules of the Supreme Court of the United States for apportioning the sum, for which a ship-owner may be liable, amongst the parties entitled thereto, apply only to claims which are limited by § 3 of the act. A proceeding in admiralty under that section and those rules is substantially a proceeding *in rem* for the distribution of a fund, and does not determine the question of the owner's liability, except to those whose claims are limited by the act, or possibly others who voluntarily become parties to the cause. It cannot affect the rights of those who have not submitted themselves to the jurisdiction, and whose claims are not limited to the amount to be distributed, but rest upon the owner's personal liability at common law as a wrongdoer. The proceedings and decree in the District Court of the United States for the Southern District of New York do not therefore bar this

action.  *Hill Manuf. Co.* v. *Providence & New York Steamship Co.* 113 Mass. 495.  *Knowlton* v. *Providence & New York Steamship Co.* 53 N. Y. 76.  *Salisbury Mills* v. *Townsend,* 109 Mass. 115.  *Haines* v. *Carpenter,* 91 U. S. 254.  *Dial* v. *Reynolds,* 96 U. S. 340.  *Exceptions overruled.*