ROMANA C. MAYHEW *vs.* SULLIVAN MINING COMPANY.

Hancock.   Opinion April 5, 1884.

*Negligence.   Master and servant.   Fellow-servant.   Mining.   Evidence.
Expert testimony.*

One who contracts with a mining company to break down rock and ore for a certain distance to disclose the vein, at a stipulated price per foot, the company to furnish steam drill and keep the drift clear of rock, as the contractor broke it down, is to be regarded as a contractor with and not a servant of the company.   He is not a fellow-servant with the superintendent of the company under whose direction his work is performed.

Where there is a binding contract for the performance of a specific job by a contractor for a price agreed, it matters not, in determining the question whether he who has undertaken such job is to be regarded as the mere servant of the other party, what kind of work was the subject of the contract, or whether it was or not a portion of the regular work which the party contracting for it was carrying on.

Where a ladder-hole is cut in a platform to a mine, while it is in active operation, by the direction of the superintendent, and one, who is employed in the mine, for want of a railing, or light, or want of warning, falls through the hole and is injured, the company operating the mine is liable for the damages sustained, whether the person so injured was a servant or contractor.

The testimony of experts is rightly excluded when the subject of the inquiry is one which can be perfectly comprehended and rightly passed upon by the jury without the opinion of experts.

The exclusion of testimony which raises collateral issues is in the discretion of the presiding judge, and is no ground for exception.

ON EXCEPTIONS.

An action of the case to recover damages alleged to have been sustained by the plaintiff by the negligence of the defendants. The opinion states the case. The verdict was for the plaintiff in the sum of twenty-five hundred dollars. At the trial the defendant requested the following instructions to be given to the jury :

"1st. If the negligent construction of the ladder-hole was the negligence of a servant of the company, and the plaintiff was also a servant of the company, the company would not be liable to the plaintiff for such negligence of his co-servant.

"2d. If Mayhew was engaged and employed in the general work of carrying on mining in the company's mine, he would be the servant of the company, whether he was paid by the day or the foot and he could not recover for injury caused by the negligence of any other servant of the company.

"3d. If the work Mayhew was engaged in was a part of the regular work of mining, or a part of the general mining operations in that mine, he was a servant of the company whether paid by the day or foot, and cannot recover of the company for the negligence of another servant of the company when such negligence is also in doing some part of the regular work of a mine.

"4th. If Mayhew was under the direction of the superintendent in his work, which was a part of the general, regular work of mining operations, he would be so far a servant of the company, that he could not recover of the company, for injuries caused by the negligence of another servant of the company, also engaged in the general work of the mine."

Each of which requests was declined. The judge instructed the jury upon this question as follows :

"I instruct you as a matter of law, that if you find the contract. as the plaintiff claims it, the plaintiff was not a servant of the defendant corporation within the meaning of the law, and not a. co-servant with the day laborers and servants of the corporation and therefore is in no way responsible for the negligence of the servants of the corporation."

The plaintiff claimed prospective damages, and upon this point the judge instructed the jury as follows :

"In contemplation of law, when one receives an injury through the fault of another, he sustains and suffers all the damage that may accrue to him by reason of the injury in the distant future as well as at the moment. The injury is the thing that gives him the right of action, and a right to recover, and the law contemplates that the moment the injury is inflicted all the damage that ever may flow from it is suffered, and therefore only one action is given, only one action can be maintained."

Upon the question of prospective damages, the defendant requested the following instructions:

"1st. To recover for any prospective damages the plaintiff must satisfy the jury from a preponderance of the evidence that there is a reasonable certainty that such damage will ensue.

" 2d. To recover for prospective damages it is not sufficient that the plaintiff show that they may ensue. He must prove that it is reasonably certain that they will ensue.

" 3d. To recover for prospective damages it is not sufficient for the plaintiff to show that the chances are they will ensue. He must show that it is reasonably certain that they will ensue.

" 4th. The amount of the plaintiff's damages for mental suffering is not to be affected by evidence of his language or conduct but by the nature and extent of the injury which caused that suffering, and its natural tendency to produce it."

Each of which requests the judge declined, except so far as the same was given in his charge.

The defendant alleged exceptions.

*A. P. Wiswell,* for the plaintiff, cited: *Lewis* v. *Smith,* 107 Mass. 334; *Hill Manufacturing Company* v. *Providence and New York S. S. Co.* 125 Mass. 292; *Kidder* v. *Dunstable,* 11 Gray, 344; *Collins* v. *Dorchester,* 6 Cush. 396; *Aldrich* v. *Pelham,* 1 Gray, 510; *Carter* v. *Boehm,* 1 Smith's Lead. Cas. 618; Sherman & Red. Negligence, § 101; *Linton* v. *Smith,* 8 Gray, 147; *Randleson* v. *Murray,* 8 Ad. & El. 109; *Eaton* v. *E. & N. A. R. R. Co.* 59 Maine, 520; *Turner* v. *Great Eastern Ry. Co.* 33 L. T. N. S. 431; *Rourke* v. *White Moss Colliery Co.* 2 L. R., C. P. Div. 205; Jacob's Fisher's Digest, 8913; *King*

v. *N. Y. Cent., &c. R. R. Co.* 66 N. Y. 181 (23 Am. R. 39) ;
*McCafferty* v. *Railroad Co.* 61 N. Y. 178 ; *Coughtry* v. *Globe Woolen Co.* 56 N. Y. 124 ; Wharton, Ev. § 153 ; *Buzzell* v. *Laconia Man. Co.* 48 Maine, 113 ; *Shanny* v. *Androscoggin Mills,* 66 Maine, 420.

*Hale, Emery and Hamlin,* for the defendant.

Negligence or its converse is a comparative matter. The jury cannot prescribe a rule, a standard. They cannot enact a law requiring this or that element of safety. They can only say whether the matter as it exists is up to the average. This mining company was bound to keep up to the average. The plaintiff was entitled to ordinary care on its part. How can the jury tell whether the lack of a railing was a lack of ordinary care unless they are told how it is ordinarily in other mines? This was what we attempted to show by witnesses. *Waters* v. *Moss,* 12 Cal. 535 ; *Fuller* v. *R. R. Co.* 21 Conn. 557 ; *Raymond* v. *Lowell,* 6 Cush. 531 ; *Cooper* v. *Central R. R.* 44 Iowa, 134.

If there was negligence it was that of a fellow-servant—the superintendent or Stanley—and the master is not liable. *Lawler* v. *And. R. R. Co.* 62 Maine, 463 ; *Osborne* v. *K. & L. R. R. Co.* 68 Maine, 49 ; *Albro* v. *Agawam Canal Co.* 6 Cush. 75.

Was the plaintiff a servant of the company? He was to break down the rock alongside the vein, to leave the vein disclosed. This was clearly a part of the regular work of the mine. It was not a part of the constructing a mine, but a part of operating a mine. Something that must be done to get out the ore. The plaintiff while so employed was a miner at work in the mine for the company. Had he been paid by the day no question could have arisen.

In all cases where it is said that a contractor is not a servant or fellow-servant it will be found that his work was not a part of the every day work of the business.

That contractors are servants, see : *Chicago R. R. Co.* v. *McCarthy,* 20 Ill. 385 ; *Stowe* v. *Chelsea R. R. Co.* 19 N. H. 428 ; *Carman* v. *R. R. Co.* 4 Ohio, 399.

As to who may be fellow-servants, see : *Wonder* v. *Balt. R. R. Co.* 32 Md. 411 ; *Kielley* v. *Belcher Mining Co.* 3 Sawyer, 500 ; *Valtez* v. *Ohio Ry. Co.* 85 Ill. 500 ; *Walker* v. *B. & M. R. R. Co.* 128 Mass. 8 ; *Gibson* v. *N. Y. C. Ry. Co.* 22 Hun. 289 ; *Dana* v. *N. Y. C. Ry. Co.* 23 Hun. 473 ; *Gormley* v. *Ry. Co.* 72 Ind. 31 ; *Zeigler* v. *Day*, 123 Mass. 152 ; *Johnson* v. *Boston*, 118 Mass. 114.

It is not a case of defective materials or platform as such. It is not within the principle of the cases holding the master responsible to his servant for the neglect of another servant charged with repairs or keeping in order of building or machinery. If the company's servant charged with keeping the platform in good repair had neglected that duty and the accident resulted from that neglect the company would have been liable. Stanley was not repairing the platform. He was making a hole through it for another purpose and a proper purpose. The negligence was not in constructing or repairing the platform but in another mining operation carrying on the mine. If the injury had resulted from imperfect timbering the company would be liable. If it resulted from the misconduct of a servant while timbering the company would not be liable. Counsel cited : *Smith* v. *Lowell M. Co.* 124 Mass. 114 ; *Killea* v. *Faxon*, 125 Mass. 485 ; *Kelley* v. *Norcross*, 121 Mass. 508 ; *Ziegler* v. *Day*, 123 Mass. 152 ; *Cooper* v. *Hamilton Co.* 14 Allen, 193.

BARROWS, J. The plaintiff claimed to recover damages of the defendants on the ground that, prior to the 3d day of December, 1881, he had entered into a written contract with them to break down the rock and ore for a certain distance so as to disclose the vein in a certain drift in their mine leading northerly from the main shaft at a distance of two hundred and seventy feet from the surface, at an agreed price for each horizontal foot of rock and ore so broken down, he to furnish his own powder and oil and the men to run the machine ( who were to be paid by him ), the company to furnish the steam drill and keep the drift clear of rock as he broke it down, — that long prior to that date the company had constructed a substantial platform in their

shaft at the 270 foot level and at the entrance of the drift in which the plaintiff and his men were performing their labor under that contract, which platform until that day entirely filled the shaft at that point excepting a hole in one corner known as the bucket-hole,—that it was provided in the contract that the plaintiff and his men were to have the use of the platform and of the bucket to go up and down while performing the contract, —that defendants were bound to keep said platform in a suitable and safe condition for the use of all persons properly upon and using the same, and up to that time it had been used by the plaintiff and others employed in that drift in the ordinary course of their labors daily,—that on that day the defendants carelessly and negligently caused a hole three feet in length by twenty-six inches in breadth to be cut for a ladder-hole in that platform near the centre of it directly back of the bucket-hole and twenty inches distant therefrom, without placing any rail or barrier about it, or any light or other warning there, and without giving the plaintiff notice that any such dangerous change had been made in the platform,— and that without any knowledge of its existence or fault on his part, the plaintiff, in the ordinary course of his business having occasion to go upon the platform fell through this new hole a distance of thirty-five feet, and received serious bodily injury. It appears in the exceptions that the written contract with the plaintiff was in the possession of the defendants, but it was not produced by them, and its full details as given by the plaintiff in his testimony should be regarded as proved. The only modification suggested in defence comes from the testimony of the defendants' superintendent to the effect that "plaintiff in his work was under the direction of the superintendent." There was evidence that the ladder-hole was made by direction of the defendants' "superintendent."

Hereupon the defendants requested various instructions, for the details of which reference may be had to the bill of exceptions, all looking to a finding by the jury that the plaintiff doing his work under the direction of the superintendent and being engaged in the general work of carrying on mining in the company's mine, although he was paid by the foot for the work done by

him and the men in his employ, was not a contractor with but a servant of the defendants, and so not entitled to recover for an injury caused by the negligence of a fellow-servant. The presiding judge refused the several requests, and said to the jury : "I instruct you as matter of law that if you find the contract as the plaintiff claims it, the plaintiff was not a servant of the defendant corporation within the meaning of the law, and not a co-servant with the day laborers and servants of the corporation." The defendants seasonably excepted to this instruction and to the refusal of their requests. The exceptions are not tenable.

1. The defendants found their claim that the plaintiff was simply a servant of the company, and so a co-servant with the superintendent and the man who cut the hole in the platform under his direction, upon the idea that the work he was doing (blasting to disclose the vein) was part of the regular work of the mine, and was done under the direction of the superintendent, and hence they argue that the relation between him and the company was that of master and servant merely, and not that of parties bound to each other as mutual contractors for any purpose except for the rendering and compensation of personal services.

A glance at the abbreviated statement of the terms and conditions of the contract above given will show the fallacy of the claim. Here was a job of a certain number of feet of rock and ore to be broken down at a stipulated price, by one who was to furnish and pay his own assistants and find the materials necessary for the performance of the job. The defendants let this piece of work to be performed by a contractor, instead of employing men to perform it. Had this been a suit brought by one of Mayhew's employees to recover for an injury caused by the negligence of one of the men who was operating the steam-drill which they were to furnish Mayhew under the contract, it would have quickened the perceptions of the defendants as to what constituted a contract with Mayhew, and they would have confidently claimed exemption from liability upon the ground that the man who was running the steam-drill, though paid by them was not *their* servant, but *pro hac vice*, the servant of the contractor, and they would have found in *Rourke* v. *White Moss Colliery*

*Co.* 2 L. R. C. P. Divis. 205, an authority in point to support their claim, where the subject and terms of the contract were singularly like those in this case in their general character. Similar in principle are *Murray* v. *Currie*, 6 L. R. C. P. Div. 24; *Reedie* v. *R'y. Co.* 4 Ex. Ch. 244; *Pearson* v. *Cox*, 2 L. R. C. P. Div. 369.

This case does not seem to call for an extended review of the decisions, some of them irreconcilably conflicting, touching the liability imposed by law upon masters for the negligent acts of servants in their employ, and what constitutes the relation of master and servant in such cases. That has been done not long since in *Eaton* v. *B. & N. A. R. Co.* 59 Maine, 520; and *McCarthy* v. *Second Parish in Portland*, 71 Maine, 318.

We think it clear that upon the undisputed evidence presented in these exceptions Mayhew was a contractor with the defendants for the performance of this job, and not a servant employed by them, whose services they could dispense with at will, or who could be regarded as assuming any risks arising from the negligence of the company's servant or superintendent. It was directly held in *Eaton* v. *E. & N. A. R. Co. supra*, that the fact that the work was to be done "under the direction of the chief engineer of said company as required by the contract" did not convert the contractors into servants of the railway company, and that fact is all that can be inferred from the testimony of the defendants' superintendent in the present case. Defendants' counsel lay much stress upon the fact that it was part of the regular mining operations that Mayhew was carrying on. But where there is a binding contract for the performance of a specific job by the contractor and those whom he may employ for a price agreed, it matters not, in determining the question whether he who has undertaken such job is to be regarded as the mere servant of the other party, what kind of work was the subject of the contract, or whether it was or was not a portion of the regular work which the party contracting for it is carrying on, or some piece of work incidentally connected with it as necessary or convenient. Such an agreement bears little resemblance to a mere arrangement for the compensation of personal services by the piece instead of by

the day.    We think the instruction given was correct upon the uncontradicted testimony, and the requested instructions being inconsistent with it were rightly refused.

2.  But elaborate discussion of the relations of the parties to each other in this particular seems the more needless, because we are of the opinion that the case falls into that class which requires an employer at his peril to keep his premises and all ways of access thereto free from unknown dangers not naturally or commonly incident to the work to be carried on there, and makes him liable to his servants and employees, as well as to all others who are there by his invitation, for the existence of secret pitfalls which he negligently permits or causes to be made when damages thereby accrue without the fault of the injured party.

In Thompson on Negligence, Vol. 2, p. 973, we find the law upon this topic briefly stated as follows :   "If the master has failed in his duty in this respect, and the servant has, in consequence of such failure, been injured without fault on his part, and without having voluntarily assumed the risk of the consequences of the master's negligence with full knowledge or competent means of knowledge of the danger, he may recover damages of the master." Numerous cases are cited in support of the doctrine thus laid down, and among them *Buzzell* v. *Laconia Man. Co.* 48 Maine, 113 ; *Shanny* v. *Androscoggin Mills Co.* 66 Maine, 420, in both which and in the cases there cited, it is fully recognized and affirmed.    In the full and valuable text book from which the above quotation is made, it is well said also (p. 974) that the servant has a remedy against the master when the injury is in consequence of the direct negligence of the master or his vice-principal in his personal conduct of the work ; and, (p. 975) when the carelessness of the master exposes the servant to sudden and unusual danger.

These rules are thus illustrated :   " The master may not with impunity expose a servant to dangers not contemplated in his original contract of employment and not connected therewith. Thus the proprietors of an establishment in one room of which about twenty girls were employed deemed it expedient to remove an engine from one room of the factory to another.    Being

pressed with business, they made the change in the night-time; and in the morning the machine was left in such a position that the main shaft projected through the wall into this room from four to six feet. In this state the machinery was put in motion. One of the girls in passing near the revolving shaft about her work was caught by it and injured." The employer was held liable. *Fairbank* v. *Haentzche*, 73 Ill. 237.

Now, as to what makes a "vice-principal"; The generally received doctrine is as stated in Wharton on Negligence, § 229: When the employer leaves everything in the hands of the middle-man reserving to himself no discretion, then a middle-man's negligence is the employer's negligence for which the latter is liable."

It cannot be questioned that the superintendent of this mine, to all intents and purposes, had this control of the defendants' business there. Applying these principles to the case before us. Had Mayhew instead of being a contractor been a servant and day-laborer in the employ of the defendants, they must still be held chargeable under the circumstances for the act of their superintendent in thus converting a substantial platform in constant and daily use into a dangerous trap, without light, barrier, or warning to the plaintiff.

The ruling of the presiding judge was not only correct, but the defendant's contention upon the point to which it related was immaterial, and could not affect the result. Nor could it aid the defendants to avoid their liability in such a case, if it appeared affirmatively that the neglect to notify the plaintiff or to guard or light the pitfall which was made by the direction of their superintendent on their premises, was the neglect of a subordinate who did the work. The hidden and extraordinary danger which caused the plaintiff's hurt, bears little analogy to the obvious perils in *Lawler* v. *Androscoggin R. R. Co.* 62 Maine, 463; and *Osborne* v. *Knox & Lincoln R. R. Co.* 68 Maine, 49, which are cited by the vigilant counsel to support their contention that "the improper construction of the ladder-hole (if it was improper), the want of light or railing, or the want of warning was the negligence of the superintendent or Stanley, and if it was the negligence of the superintendent the same rule applies."

Created as the danger here was, by the direction of one who, *quoad hoc*, stood in the place and stead of the defendants themselves, their reasonable duty was to protect the plaintiff against suffering from it unawares, whether he was a servant or contractor.

3. Defendants' counsel argue that this case " is not within the principle of the cases holding the master responsible to his servant for the neglect of another servant charged with the repairs or keeping in order of buildings or machinery," because it is not a case of a platform made of defective materials, or badly put together. They rightly concede that " if the defendants' servant charged with the duty of keeping the platform in good repair, had neglected that duty or insufficiently performed it, and the accident had resulted from that neglect, the company would have been liable." But they seem to derive consolation and encouragement from the undisputed fact that " the platform was strong, properly built of good materials and in good repair," until this hole was made in it by direction of defendants' superintendent. They contend that the negligence which caused the plaintiff's injury was, " in another mining operation — in the carrying on of the work of the mine." We think that the distinction which the counsel seek to draw as to the character of the negligence is not available. It was negligence which exposed the plaintiff to a peril, the risk of which he never assumed. It created a danger in a place where a servant had a right to expect safety. It was the negligence of those for whose fault in this particular the defendants were responsible. That it was committed in furtherance of the defendants' mining operations, can no more aid the defence here than it did in cases of like negligence in *Fairbank* v. *Haentzche*, and *Berea Stone Co*. v. *Kraft, supra*.

Nor is it of any importance whether the negligence exhibits itself in the form of chronic remissness, superficial oversight, or positive careless act which introduces unawares a new and serious danger upon premises previously safe. We do not think the scanty protection for servants and employees which they enjoy under the rule, should be abridged by mere subtlety of reasoning and verbal refinements of logic.

4. Nor do the instructions given, respecting the allowance of

damages for the future, furnish the defendants any good cause of complaint. As to damages, the defendants' first request for instructions, besides being fully covered in the charge, was emphatically given in terms; and the other requests, in one form or another, all called for a measure of proof which is not appropriate in the trial of civil causes to the jury, and were for this cause rightly refused.

5. The defendants complain because they were not allowed to ask Stanley (who made this hole in the platform, under the direction of the defendants' superintendent, and who testified that he was a miner of twenty-five years' experience, that he had worked in several different mines and had constructed other ladder-holes, and noticed many more,) the following questions:

" Have you ever known ladder-holes at a lower level to be railed or fenced round?"

"As a miner, is it feasible, in your opinion, to use a ladder-hole with a railing round it?"

" Have you ever seen a ladder-hole in a mine, below the surface, with a railing round it?"

Also that they were not allowed to ask one Dugan (who gave similar testimony as to the length of his experience as a miner, and that he had worked in many different mines and observed the ladder-holes in them,) this question: "From your experience as a miner, whether or not this ladder-hole, as Mr. Stanley left it, was constructed in the usual and ordinary manner of ladder-holes in mines, and in a proper way?"

Defendants' counsel claim that the favorable answers to these questions which they had a right to expect would have tended to show that there was no want of "average ordinary care" on the part of the defendants. We think the questions were properly excluded. The nature of the act in which the defendants' negligence was asserted to consist, with all the circumstances of time and place, whether of commission or omission, and its connection with the plaintiff's injury, presented a case as to which the jury were as well qualified to judge as any expert could be. It was not a case where the opinion of experts could be necessary or useful. See for analogous instances: *Cannell* **v.**

*Ins. Co.* 59 Maine, 582, 591; *State* v. *Watson*, 65 Maine, 76, 77, and cases there cited.   See also, Lord MANSFIELD'S opinion in *Carter* v. *Boehm*, 3 Burr. 1905, and note to S. C. Smith's Leading Cases, 6th Am. Ed. Vol. 1, part 2, p. 769.   If the defendants had proved that in every mining establishment that has existed since the days of Tubal-Cain, it has been the practice to cut ladder-holes in their platforms, situated as this was while in daily use for mining operations, without guarding or lighting them, and without notice to contractors or workmen, it would have no tendency to show that the act was consistent with ordinary prudence, or a due regard for the safety of those who were using their premises by their invitation.   The gross carelessness of the act appears conclusively upon its recital. Defendants' counsel argue that " if it should appear that they rarely had railings, then it tends to show no want of ordinary care in that respect," that " if one conforms to custom he is so far exercising average ordinary care."   The argument proceeds upon an erroneous idea of what constitutes ordinary care. " Custom " and " average " have no proper place in its definition.

It would be no excuse for a want of ordinary care that carelessness was universal about the matter involved, or at the place of the accident, or in the business generally.   Ordinary care is the care which persons of ordinary prudence — not careless persons — would take under all the circumstances.   See definition approved in *Topsham* v. *Lisbon*, 65 Maine, 455.   " Reasonable care is perhaps as good a term and conveys as correct an idea of the care· required."   It was held not sufficient to relieve the defendant from the imputation of negligence, to show that the elevator way " was constructed in the manner usual in the defendants' business." *Indermauer* v. *Dames* (in the Exchequer Chamber), 2 L. R. C. P. 310.

The remark in *Low* v. *G. T. R'y Co.* 72 Maine, 320, that "in fitting up a place for business purposes, one is at liberty to consult his own convenience and profit, but not without a reason-· able regard for the safety of those whom his operations bring upon his premises upon lawful business errands; in particular, everything which may operate as a trap or pitfall   .   .   .   is to

be avoided, if reasonable care will accomplish security to life and limb in that respect," is applicable here.

The tendency of part of the questions to raise collateral issues is obvious.

The exclusion of testimony of that description in the discretion of the judge, is no ground for exceptions. Exceptions to the exclusion of testimony, having a similar bearing and tendency, were overruled in *Lewis* v. *Smith*, 107 Mass. 334 ; *Hill Manf'g Co.* v. *Providence & N. York Steamship Co.* 125 Mass. 292.

One substantial ground for excluding evidence of collateral facts, is that it is seldom that such identity in all essentials, is found, that a legitimate inference respecting the one case can be drawn from the other, and a host of collateral issues are brought in to distract the attention of the jury from the real point. The fear of this has sometimes, perhaps, produced decisions excluding evidence, which might throw light upon the issue ; but the present case well illustrates the absurdity that would attend an indiscriminate admission of it. It is not probable that the defendants could show a single instance where, while a mine was in active operation, a ladder-hole so dangerously located as this, was cut and left without railing or light, or notice to the workmen ; and the naked fact (whatever it may have been) as to the existence of railings about such holes in other mines, could not have even the semblance of a bearing upon the contention here, without proof that they were cut under like circumstances.

Here, there was no pretence of any notice to the plaintiff of the existence of the chasm into which he fell.

There is no motion to set aside the verdict as against evidence in any particular, nor any complaint that the damages are excessive.

We find no error in the conduct of the trial, or in the instructions to the jury, which requires correction in order that justice may be done.

*Exceptions overruled.*

PETERS, C. J., WALTON, DANFORTH and LIBBEY, JJ., concurred.