JAMES HOPKINS SMITH, and another, *vs.* JOSEPH H. BLAKE.

Cumberland.    Opinion January 8, 1896.

*Lease.    Rent.    Payment.    Evidence.*

The meaning and construction of written contracts is to be ascertained from the language used.

In a lease which reserves an annual rental of twenty-seven hundred dollars, and contains a covenant of the lessee to pay the said rent in equal quarterly payments of six hundred and twenty-five dollars each, the erroneous division of the reserved rent does not have the effect to reduce the rent to twenty-five hundred dollars. Taken as a whole, a lease thus written satisfactorily shows that the rent reserved was twenty-seven hundred dollars; and that its erroneous subdivision into quarters was merely a mathematical mistake.

*Held*; that parol evidence is not admissible to control or explain the provisions of the lease; but the receipts given for rent are open to explanation.

ON REPORT.

This is an action of assumpsit upon an account annexed to the writ as follows: "Portland, Me., September 1st, 1894. Joseph H. Blake to James Hopkins Smith and Henry St. John Smith, Dr. To use and occupation of plaintiffs' land, tenements and messuages, viz: of that portion of Widgery's wharf with the buildings thereon, in said Portland, owned by said lessors, together with the rights of way thereto pertaining, belonging to said lessors, from the 23rd day of August, A. D., 1892, to the 23rd day of August, A. D., 1894, at $2700 per annum, as per

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| written lease, | - | - | - | - | $5400 |
| "Contra credit by cash, | - | - | - | - | 5000 |
|  |  |  |  |  | ——— |
| "Balance due, | - | - | - | - | $400 |
| "Interest thereon from the several dates when the installments thereon became due as per written lease, to date of writ, | - | - | - | | 25 " |
|  |  |  |  |  | ——— |
| Total, | - | - | - | - | $425" |

The writ was dated September 1, 1894. The plea, the general issue.

The plaintiffs put in the following lease and stopped:

"This indenture, made the twenty-third day of August in the year of our Lord one thousand eight hundred and ninety-two, Witnesseth, That James Hopkins Smith of the city, county and State of New York, and Henry St. John Smith of Portland, county of Cumberland and State of Maine, do hereby lease, demise, and let unto Joseph H. Blake of Portland in said county of Cumberland and State of Maine, that portion of Widgery's wharf so called, with the buildings thereon, situated in the said Portland, now owned by the said lessors, together with the rights of way thereto pertaining, belonging to said lessors. The premises to be kept in repair by said lessors in such manner as in their judgment is required; to hold, for the term of seven years from the twenty-third day of August in the year of our Lord eighteen hundred and ninety-two, yielding and paying therefor the rent of twenty-seven hundred dollars per annum. And the said lessees do so covenant to pay the said rent in equal quarterly

payments as follows : Six hundred and twenty-five dollars on the twenty-third day of each November, February, May and August, during the whole of said term, and to quit and deliver up the premises to the lessors or their attorney, peaceably and quietly at the end of the term aforesaid, in as good condition and order,— reasonable use and wearing thereof, loss by fire, or inevitable accident excepted,— as the same are or may be, put into by the said lessor, and to pay all water rates and not make or suffer any waste thereof ; and that he will not assign or under-let the premises, or any part thereof, without the consent of the lessors in writing, on the back of this lease. And the lessors may enter to view and make improvement, and to show the premises to persons wishing to hire or to purchase, and to expel the lessee if he shall fail to pay the rent aforesaid, whether said rent be demanded or not, or if he shall make or suffer any strip or waste thereof, or shall fail to quit and surrender the premises to the lessors at the end of said term, in manner aforesaid, or shall violate any of the covenants in this lease by said lessee to be performed.

"And it is further agreed, that in case said premises shall be destroyed or damaged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation, then, and in such case, the rent hereinbefore reserved, or a just and proportional part thereof, according to the nature and extent of injuries sustained, shall be suspended or abated, until the said premises shall have been put in proper condition for use and habitation by the said lessors, or these presents shall thereby be determined and ended at the election of the said lessors, or their legal representatives.

"And it is further agreed that the premises shall not be occupied, during the said term, for any purpose usually denominated extra-hazardous as to fire, by insurance companies." . . .

Other facts appear in the opinion.

*J. W. Symonds, D. W. Snow and C. S. Cook,* for plaintiffs.

Courts of law and equity, for the rule was the same in both, where there is a manifest error in a document, will put a sensi-

ble meaning on a contract by correcting or reading the error as corrected. · *Burchell* v. *Clark*, L. R. 2 C. P. Div. 97.

· In *Spyve* v. *Topham*, 3 East, 115, indentures of lease and release were intended to be made to a trustee but were made by mistake to the cestui que trust, so that no estate passed by the exact words of the deed, but in the habendum and the rest of the deed the trustee's name was used. It was held that the title was good, and Lord Ellenborough said : "The cases cited are perfectly satisfactory in authorizing us to put a construction on the deed in support of it, which from the reason and good sense of the thing we should probably have done without such authorities." *Ewer* v. *Myrick*, 1 Cush. 16.

If there be two clauses or parts of a deed repugnant the one to the other, the first part shall be received and the latter rejected, except there be some special reason to the contrary ; and therefore herein a deed doth differ from a will. Shep. Touch. 2 Bl. Com. 381.

*Seth L. Larrabee and Melville A. Floyd*, for defendant.

Plaintiffs admit that one of them, James H. Smith, drafted this lease, making duplicates which were executed by both plaintiffs and defendant in Henry Smith's office. They admit that the lease in suit was a second one drafted to take the place of a prior one offered to plaintiff but objected to by him on some ground. They admit the payments by defendant, quarterly, promptly for six successive payments, of $625 per quarter, and their receipt of the same, without objection. Payments were made by check in each instance and the checks came into the hands of both plaintiffs. Receipts for quarterly rent stating specific quarters were given by the Smiths for nearly two years. At the time of the first payment November 23, 1892, defendant by Henry's request, plaintiffs' copy of lease not being at hand, produced his own copy for inspection and Henry took it and examined it. An amicable arrangement was made by which defendant should deposit his money in the bank with which Henry is connected so that the payments were made by checks to Henry there. The plaintiffs by their acts for nearly two years, during which time they both had full knowledge of the subject

matter, have placed a construction upon the lease in suit which the court in view of the circumstances of its execution will not change.

In this case the actual consideration of the lease may be shown by parol evidence.

"Parol evidence may be given of a consideration not mentioned in a deed provided it be not inconsistent with the consideration expressed in it." 1 Greenl. Ev. § 285; *Warren* v. *Walker,* 23 Maine, 459; *Varney* v. *Bradford,* 86 Maine, 510.

Evidence offered to support either $625 per quarter or $2700 per year as a consideration in the lease in suit is not contradictory of or inconsistent with the consideration as written into the lease by plaintiffs, for both amounts are by them stated.

In *Smith* v. *Faulkner,* 12 Gray, 255, the court say : "If their meaning is doubtful you resort to extrinsic evidence not to discover an intention outside the contract nor to import an intention into it, but to enable you the better to read, understand and interpret what is in the contract." . . . "Nor is this rule, by which the court interprets the contract, departed from where the extrinsic evidence is itself a matter of controversy."

SITTING :   WALTON,   FOSTER,   WHITEHOUSE,   WISWELL, STROUT, JJ.

STROUT, J.   On the twenty-third day of August, 1892, plaintiffs leased defendant certain wharf property for seven years, "yielding and paying therefor the rent of twenty-seven hundred dollars per annum." " And the said lessee do so covenant to pay the said rent in equal quarterly payments, as follows, six hundred and twenty-five dollars on the twenty-third day of each November, February, May and, August during the whole of said term."   And in the reddendum the lessors are given the right "to expel the lessee if he shall fail to pay *the rent afore-said.*"   And in the fire clause, it was provided that in case of loss or damage, by fire, "*the rent hereinbefore reserved*" shall be abated or suspended until the premises should be restored. The question is, whether the rent under the lease is twenty-

seven hundred dollars yearly, or twenty-five hundred dollars, the amount of four quarterly payments of six hundred and twenty-five dollars each.

The meaning and construction of written contracts is to be ascertained from the language used. Parol testimony may be admitted to explain a latent ambiguity, but not one patent upon the terms of the contract. So the circumstances in which the parties. were placed at the time of making the contract, and collateral facts surrounding it, may be shown. 1 Greenl. Ev. § 297. Mere inaccuracy of language does not constitute an ambiguity of either class. In such cases parol evidence is inadmissible to show the intention of the parties. The language of this lease is explicit, and the question in issue cannot be determined from parol evidence of what was said and done at the time of the contract, but must be ascertained from the lease itself.

In a letting for a series of years, the leading idea as to rent, is the yearly rental. Its subdivision into frequent payments is a matter of mathematics, and a secondary subject of thought. It is common knowledge that in the great majority of leases, and in negotiations for them, the rent stated and talked about is the yearly rent. In this lease the grant is made, "yielding and paying therefor the rent of twenty-seven hundred dollars per annum." The gross yearly sum was clearly in the minds of the parties and clearly stated. The tenant's covenant was "to pay the said rent in equal quarterly payments." And the covenant would have been complete if it had stopped there. And in that case, no doubt could have existed that the rent per year was twenty-seven hundred dollars; but the covenant proceeded unnecessarily to add "as follows, six hundred and twenty-five dollars" each quarter. This unnecessary addition, disagreeing in the amount with the rent immediately before reserved, which the lessee covenanted to pay, is manifestly a clerical error. It is to be construed as if it read, the tenant covenants to pay the rent reserved in equal quarterly payments, which are, or equal to, six hundred and twenty-five dollars per quarter. If such was the language, there could be no doubt that the annual rent

was twenty-seven hundred dollars; and the attempted division into quarters was simply a mathematical error, which should be rejected, or corrected.

"The great rule for the interpretation of written contracts is that the intention of the parties must govern. This intention must be ascertained from the contract itself, unless there is an ambiguity. In ascertaining the meaning of the parties as expressed in the contract, all of its parts and clauses must be considered together, that it may be seen how far one clause is explained, modified, limited or controlled by the others." Applying this rule, it appears that the rent reserved in the grant was twenty-seven hundred dollars; that the tenant coven-anted to pay "the said rent in equal quarterly payments;" that in the reddendum he was to be expelled if he failed to "pay the rent aforesaid;" and in the fire clause the stipulation is "the rent hereinbefore reserved." The rent reserved in the grant was twenty-seven hundred dollars. The erroneous division of that rent into four parts, cannot modify or control the express rent reserved and mentioned in the grant, the reddendum and the fire clause, but is controlled by them.

But it is said, that the parties by their acts have given a construction to the contract in accordance with defendant's construction. Such acts, if done understandingly, with full knowledge of all the facts, are sometimes of controlling force. It appears that six quarters' rent, at the rate of six hundred and twenty-five dollars each, were paid to Henry St. John Smith, one of plaintiffs, and receipts were given in each case for three months' rent. But it also appears that the contract for lease was made with the other plaintiff, James H. Smith, and that Henry was not familiar with its terms. Henry says that at one time defendant called to pay the rent, and showed him the lease, folded so as to show the six hundred and twenty-five per quarter, but not to show the twenty-seven hundred dollars reserved rent; and that he looked at it, and supposing it to be right, accepted the money and gave the receipt, which defend-ant had previously prepared. This is denied by defendant, though he admits showing Henry the lease, Henry not having

present plaintiffs' duplicate. But in May, 1894, when defendant offered to pay the rent to Henry, he had discovered the mistake, and declined to receive the money. The matter ran along till August 23, 1894, when defendant, by letter to plaintiffs, proposed to tender twelve hundred and fifty dollars, two quarters' rent then being due, unconditionally, and without prejudice to any claims plaintiffs might have for any larger or different sum ; and on August 27, 1894, twelve hundred and fifty· dollars was paid to James, and·a receipt given for the amount, " On account rent due under written lease." Thereafterward the receipts were given on account of rent.

Defendant claims that when the twelve hundred and fifty dollars were paid, it was a settlement of all claims to the date of payment, and a waiver by agreement of any claim under the lease for a yearly rent in excess of twenty-five hundred dollars. But this claim is negatived by defendant's letter to plaintiffs, of August 23, 1894, and the terms of the twelve hundred and fifty dollars receipt, and all subsequent receipts.

The plaintiffs are men of large affairs, and it is not difficult to understand how they might be misled by the quarterly amounts stated in the lease. Their receipts in full for several quarters are open to explanation. Upon all the evidence, we are satisfied that they were misled, perhaps by a lack of caution, but the defendant has not been prejudiced thereby.

"A court of law should read a written contract according to the obvious intention of the parties, in spite of clerical errors or omissions which can be corrected by perusing the whole instrument." *Wallis Iron Works* v. *Monument Park Association*, 55 N. J. L. 152.

It·is the opinion of the court, that the rent reserved by this lease is twenty-seven hundred dollars per annum, and that the naming of six hundred and twenty-five dollars as the quarterly payments, is a clerical error, which should be, and is corrected by perusal of the whole lease. The suit is for the difference between twenty-five hundred dollars per annum, which has been paid, and twenty-seven hundred dollars per annum, which

should have been paid; and the plaintiffs are entitled to recover it.

*Judgment for plaintiffs.*