ARTHUR C. DUTCH *vs.* BODWELL GRANITE COMPANY.

Knox.    Opinion February 16, 1900.

*Evidence. Expert. New Trial.*

The admission of immaterial evidence is not necessarily error; but it may be, if the evidence is mischievous and calculated to mislead the jury.

The defendant had exceptions to evidence that blacksmiths do not commonly use refined iron in forgings required to withstand a strain. *Held;* that whether they do or not is immaterial, since they may not use it for various reasons, e. g. its weakness, cost, non-malleability and difficulty in working it, or the infrequency of not having a supply at hand, or for other reasons peculiar to them.

The plaintiff obtained a verdict for personal injuries which he contended, among other reasons, was caused by the defendants' negligent construction of a dray used by them for hauling stone. The case was contested upon other points besides the defective dray, and the defendants contended that the injury resulted from the plaintiff's own conduct and not from the defective dray.

*Held;* that a motion for a new trial should be overruled, it appearing that the trial was a fair one, conducted by eminent counsel and the verdict supported by evidence which the court cannot say is insufficient.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

This was an action on the case for personal injuries, in which the jury returned a verdict of $1623, for the plaintiff.

Second count in plaintiff's declaration.

For that whereas the said defendant was a corporation legally organized and incorporated and was on the twentieth day of Sep-

tember, A. D. 1897, and for a long time prior thereto, had been operating a stone quarry in Jonesboro, in the county of Washington and State of Maine, and in hauling and transporting cut and rough stone from the quarry aforesaid to the wharf in said Jonesboro; that said corporation in the transportation of stone as aforesaid, constructed and used several carts and carriages known as drays, upon which the stones aforesaid were loaded and when so loaded, were hauled to a wharf in said town by horses and oxen belonging to said corporation.

And the plaintiff avers that on said twentieth day of September, 1897, he was and had been for some time prior thereto, employed by said defendant, for hire, as a teamster and driver of one of the teams of horses aforesaid.

And the plaintiff avers that it was the duty of said defendant corporation to furnish and provide him, while so employed, with proper, safe and suitable vehicles for the transportation of the stone aforesaid and for the performance of his labor and duty in his capacity as teamster in the discharge of his duties aforesaid; yet the said defendant unmindful of its obligations, as aforesaid, on said twentieth day of September, 1897, furnished to the plaintiff's use in his capacity aforesaid and for the purposes aforesaid, an unsafe, defective and unsuitable cart or dray for the purpose aforesaid, viz:—that, as constructed, the band which supported the forward part of the body of said dray was not made of suitable iron, and was wholly unfit for use and it would not endure or stand the strain and heavy weight to which the same was subjected or would ordinarily be subjected, all of which was well known to said defendant corporation, but of which the plaintiff had no knowledge and of which defect he was entirely ignorant; that notwithstanding the defect, imperfect and unsuitable iron and other materials of which said dray was constructed, the defendant, by its superintendent, foreman and agent, ordered and directed the plaintiff to go to the quarry aforesaid with the dray aforesaid and load thereon a stone of great weight and haul the same from said quarry to the wharf aforesaid; that in obedience to said order he loaded the stone aforesaid on the dray aforesaid and, while in the exercise of due

care and caution, he attempted to draw the load with his four-horse team, but being unable to do so, another four-horse team was hitched thereunto, by order of defendant, ahead of the team driven by the plaintiff; that the plaintiff in order to drive his team aforesaid sat on the seat provided for teamsters which was situated over the forward axle; that having proceeded a short distance toward the wharf aforesaid, and while the plaintiff was exercising due care, said band which supported the forward part of the body of said dray and which was affixed to the forward axle thereof, by reason of the defect aforesaid, broke or was torn open by the weight of the stone aforesaid, which permitted the body of said dray to fall suddenly to the ground causing the horses attached thereto to suddenly start forward and which, with the shock and fall aforesaid, caused the seat aforesaid to lurch forward, whereby the plaintiff was violently thrown to the ground, ledge and rocks there situated, and by reason thereof, both bones of his right leg above and near the ankle joint were fractured and broken, and by reason thereof, for a long time afterward the plaintiff suffered great pain and anguish, and by reason thereof he has been from thence hitherto unable to perform much, if any, manual labor, and as appears, is permanently injured, thereby and by reason thereof he has been subjected to great expense for surgical and medical attendance and nursing, to the damage of the said plaintiff (as he says) the sum of five thousand dollars.

The defendant's exceptions, which were to the admission of evidence introduced by the plaintiff, are stated in the opinion.

*D. N. Mortland and M. A. Johnson*, for plaintiff.

*C. E. and A. S. Littlefield*, for defendant.

Counsel cited: *Harley* v. *Buffalo Car Mnfg. Co.*, 65 Hun, 624; *McDonald* v. *State*, 127 N. Y. 18; *Sowers* v. *Dukes*, 8 Minn. 23; *Bills* v. *City of Ottumwa*, 35 Iowa, 109; *McGregor* v. *Brown*, 10 N. Y. 114; *Pulsifer* v. *Berry*, 87 Maine, 405; *Hill* v. *Portland & Rochester R. R. Co.*, 55 Maine, 445; *McCarthy* v. *Boston Duck Co.*, 165 Mass. 165; *Shepard* v. *Creamer*, 160 Mass. 496; *Hill* v. *Winsor*, 118 Mass. 251; *Hinckley* v. *Barnstable*, 109 Mass. 126;

16 Am. & Eng. Ency. of Law, p. 462; *Lake Erie & W. R. Co.* v. *Mugg*, 31 N. E. Rep. (Ind.) 564.

SITTING: EMERY, HASKELL, WISWELL, STROUT, FOGLER, JJ.

HASKELL, J. One issue on trial was whether a band, made of refined iron, around the forward axle of a four-wheeled dray was of suitable material to hang the forward end of the body of the dray upon.

A blacksmith of fifty years' experience was called as a witness for plaintiff, and in substance testified, that refined iron is a cheaper iron than Norway iron, and that the ore in it is not so good; that it is not so strong by nearly half; that some of it is brittle and that some is quite tough.

The following colloquium, in substance, took place in the presence of the jury:

Q. If you were asked to make a strap of iron, such as I have described, for a dray would you consider refined iron suitable material to be used? (Objected to.)

Court: You may get from him all he knows about iron, its tensile strength, perhaps, and the effect of it in certain conditions and places and its wear, and all those things that he knows or can testify to; but in the end whether it is suitable for a particular purpose must be determined by the jury.

Q. Is refined iron, among blacksmiths, commonly used where tensile strength is required? (Objected to and admitted subject to exception.)

A. No, sir.

Q. What is commonly used? (Objected to and admitted subject to exception.)

A. Norway iron.

Q. For what purpose is refined iron, as distinct from Norway iron, generally used?

A. It is used for a good many purposes, wheel tires for one thing, and then it is used on vessels for a good many things, hatch combings and chain plates and all such work as that.

Q.   State whether or not upon any of those you have mentioned there is any strain?

A.   I should think there was some strain upon chain plates.

The whole trend of this examination is to show that refined iron is not capable of withstanding a heavy strain, and the jury must have so considered it.

The evidence excepted to is, that blacksmiths do not commonly use refined iron in forgings that are to withstand a strain.   Whether they do or no is immaterial.   They may not use it because of its weakness, or of its cost, or of its non-malleability and hardness and the difficulty in working it, of the infrequency of having it at hand or for other reasons peculiar to them.   Forgings are best made from metal that is ductile and tough, and yet a harder, less ductile metal would serve the purpose equally well.   Immateriality made the evidence admitted incompetent.   Mere immateriality of evidence admitted is not, necessarily, error.   *Flint* v. *Rogers*, 15 Maine, 67. It may be, if the evidence be mischievous and calculated to mislead the jury.   *Royal* v. *Chandler*, 81 Maine, 118 ;   *Woodroffe* v. *Jones*, 83 Maine, 21 ;   *Pease* v. *Burrowes*, 86 Maine, 170.

Is the evidence admitted mischievous and calculated to mislead the jury ?   No exception is taken to the charge, and no request was made for instructions as to the proper application of the evidence excepted to, and we cannot say that it was of so mischievous a character, taken with the context, as to naturally mislead the jury. On the other hand, it impresses us simply as an opinion of the witness as to the comparative strength of the two kinds of iron, refined and Norway.   There was much other evidence in the case upon the question, and we feel that the verdict should not be disturbed, because this fragment of evidence, buried in the mass, literally understood, was inadmissible.   *Braley* v. *Powers*, 92 Maine, 208.

The evidence is voluminous, and the case was stoutly contested upon other points than the sufficiency of the strap.   The defense contended that the injury resulted from the plaintiff's own conduct and not from the defective iron.   The trial seems to have been a fair one, conducted by eminent counsel, and the verdict is cer-

tainly supported by evidence, and we cannot say by insufficient evidence.

*Motion and exceptions overruled.*