SAMUEL G. DAMREN et al. *vs.* GEORGE E. TRASK.

Androscoggin.    Opinion October 11, 1906.

*Covenant broken.    Assignment of breaches.    Evidence.*

It is a well settled general rule respecting the assignment of breaches of covenants that the plaintiff may allege the breaches generally by simply negativing the words of the covenant, special averments being required only when such a general assignment would not necessarily show a breach.

In an action of covenant broken upon a contract under seal for the purchase of a quantity of clapboards, the plaintiffs in their declaration set out the covenant according to its terms, and alleged performance and breach as follows: "And the plaintiffs aver that, pursuant to such deed, they have done and performed all things by them according to the covenants aforesaid to be performed. Yet said defendant has not taken away from said mill the clapboards as aforesaid, and has not paid the plaintiffs therefor the sum of forty dollars per thousand, but wholly refuses and neglects to do so, and so has not kept his covenant aforesaid, but has broken the same."

*Held:* that the language of the plaintiffs' assignment may reasonably be construed to signify a refusal to pay for the clapboards taken, as well as a refusal to pay for those not taken; and inasmuch as a breach of the contract would be established by evidence of a partial failure, as well as by evidence of a total failure in the respects named, it was a sufficient general assignment of the breach to allege an entire failure to take the clapboards, although a portion had in fact been taken, and to allege an entire failure to pay for them, although a portion had in fact been paid for.

It is a well settled and familiar rule that in cases of negligence the evidence must be confined to the time and place and circumstances of the injury, and the fact that the same person had been guilty of negligence on certain other specified occasions can have no legitimate bearing upon the question of his carefulness or competency at the time in controversy.

Evidence of a self serving character is uniformly held to be inadmissible. This is a branch of the general rule that a man shall not be allowed to make evidence for himself.

On exceptions both by plaintiffs and by defendant.    Sustained.

Action of covenant broken upon a contract under seal for the purchase of a quantity of clapboards of certain specified kinds and dimensions.

Tried at the April term, 1906 of the Supreme Judicial Court, Androscoggin County.    Plea inferred to be non est factum with a

brief statement alleging performance of the contract on the part of the defendant and a failure on the part of the plaintiffs to perform a condition precedent. Verdict for plaintiffs for $1119.97. Exceptions to rulings made by the presiding Justice during the progress of the trial, were taken both by plaintiffs and by defendant.

The case sufficiently appears in the opinion.

*Oakes, Pulsifer & Ludden,* for plaintiffs.

*Arthur S. Littlefield and C. L. Macurda,* for defendant.

Sitting: Whitehouse, Savage, Powers, Peabody, Spear, JJ.

Whitehouse, J. This is an action of covenant broken upon a contract under seal for the purchase of a quantity of clapboards of certain specified kinds and dimensions. The verdict was for the plaintiffs for $1119.97, and the case comes to this court on exceptions by both parties.

The plaintiffs' exceptions.

By the terms of the contract, the clapboards were to be taken by the defendant from the plaintiffs' mill when dressed and bundled according to the contract, and paid for at the rate of forty dollars per thousand, thirty days after delivery. Up to June 13, 1904, about 40,000 clapboards were taken by the defendant, amounting at the contract price, to $1604, and a portion of these had been paid for.

The plaintiffs in their declaration set out the covenant according to its terms, and allege performance and breach as follows: "And the plaintiffs aver that, pursuant to such deed, they have done and performed all things by them according to the covenants aforesaid to be performed. Yet said defendant has not taken away from said mill the clapboards as aforesaid, and has not paid the plaintiffs therefor the sum of forty dollars per thousand, but wholly refuses and neglects to do so, and so has not kept his covenant aforesaid, but has broken the same."

On the thirteenth day of June, 1904, the defendant refused to take any more clapboards, claiming that the plaintiffs had failed to perform the contract, and that the clapboards were not of the proper quality.

The plaintiffs claimed to recover for the clapboards delivered up to and including June 13, 1904, and damage for refusal to take clapboards thereafter; but the defendant claimed that under the allegations of breaches in the declaration, the plaintiff could not recover for the clapboards delivered but not paid for.

The court sustained the position of the defendant, and ruled that the plaintiffs, under their declaration, could not recover for any amount, which the defendant owed them on account of the forty thousand clapboards actually received by him.

The plaintiffs asked leave to amend by alleging specifically the breach of the defendant, by his refusal to pay for the clapboards. so delivered, but on objection by the defendant the court ruled that this would have the effect of introducing a new cause of action, and that as a matter of law such amendment could not be allowed. To these rulings the plaintiffs have exceptions.

It is a well settled general rule respecting the assignment of breaches of covenants that the plaintiff may allege the breaches generally by simply negativing the words of the covenant, special averments being required only when such a general assignment would not necessarily show a breach. *Glover* v. *O'Brien,* 100 Maine, 551. "A common law method for assigning a breach of covenant is to negative the words of the covenant and this is generally sufficient. And it may be assigned in other words which are co-extensive with the import and effect of the covenant and as general as those in which the covenant is expressed; or by stating its legal effect. But it must distinctly appear by express words or by necessary implication that the facts stated in the declaration cannot be true when the covenant is broken." Encyc. Pl. & Pr. Vol. 5, 369; Cyc., Vol. 11, p. 1144, and cases cited; 1 Chit. Pl. (16 Ed.) 175.

In *Brown* v. *Stebbins,* 4 Hill, 154, there was a covenant "to sell and dispose of said lots of land to the best advantage that he can obtain for the same and to pay the proceeds of said sales to the said Brown; "and the breach assigned was that the defendant "did not sell and dispose of the lots to the best advantage or for the most he could obtain for them." A special demurrer to this assignment was sustained. In the opinion the court say; "Does the pleader mean

that Stebbins did not sell at all, or that he did not sell for the best price which could have been obtained ?   It is impossible to say which. If there was no sale, that fact should have been directly alleged ; and if the complaint be that Stebbins sold, but did not get the best price which could have been obtained, the pleader should have said so in explicit terms.   Without such an averment the defendants can neither' know how to plead, nor what evidence they may expect to meet on the trial.

The breach is not assigned in the words of the joint covenants, or either of them.   And when the pleader undertakes to assign a breach coming within the substance, effect or intent of the covenant, he is held to a more strict rule than when he follows, either negatively or affirmatively, as the case may be, the words of the contract.   (Com. Dig. Pleader, C. 47.)

The remaining breach is, that Stebbins did not use all necessary care and diligence in the sale of the lots.   Here the pleader has followed and negatived the words of one of the joint covenants, and as a general rule that is sufficient."

In the case at bar it is to be inferred .from the exceptions that the defendant's plea was non est factum with a brief statement alleging performance of the contract on his part, and a failure on the part of the plaintiffs to perform a condition precedent.   No question was raised by the pleadings in regard to the sufficiency of the declaration. The plaintiffs' allegation that the " defendant has not taken away from said mill the clapboards as aforesaid, and has not paid the plaintiffs therefor the sum of forty dollars per thousand " negatives the words of the contract.   True, it does not inform the defendant specifically whether the plaintiffs complain that the contract was broken by a refusal to accept or a refusal to pay for the clapboards, or a refusal to pay for some and a refusal to accept others.   It is not a particular and explicit statement of the plaintiffs' claims.   It might perhaps have been held objectionable on special demurrer ; but errors which might be deemed fatal on a special demurrer will be disregarded when the demurrer is general, or when the defendant sets up the general issue, or a plea equivalent to the general issue. *Blake* v. *M. C. R. R. Co.,* 70 Maine, 60; *Crocker* v. *Gilbert,* 9

Cush. 134 ; and all objections to the form of a declaration, or that it does not sufficiently set forth the ground of the plaintiffs' claim, must be raised by demurrer. 1 Chit. Pl. 693, and cases cited. Only when no cause of action is stated in the declaration is the defendant justified in pleading the general issue and raising the objection upon the trial. *Fuller* v. *Jackson,* 82 Mich. 482. But the language of the plaintiffs' assignment may reasonably be construed to signify a refusal to pay for the clapboards taken, as well as a refusal to pay for those not taken ; and inasmuch as a breach of the contract would be established by evidence of a partial failure, as well as by evidence of a total failure in the respects named, it was a sufficient general assignment of the breach to allege an entire failure to take the clapboards, although a portion had in fact been taken, and to allege an entire failure to pay for them, although a portion had in fact been paid for. It is accordingly the opinion of the court that, if otherwise entitled to prevail, the plaintiffs are not precluded by any insufficiency in their declaration from recovery for the clapboards actually delivered, and that the plaintiffs' exceptions must be sustained.

This conclusion renders it unnecessary to consider the question of the plaintiffs' right to amend the declaration as proposed in their motion; but see *Wilson* v. *Widenham,* 51 Maine, 566, where it was held that if the covenants are set out in full, but a breach of only one is alleged, an amendment is allowable adding a new count alleging the breach of another covenant.

The defendant's exceptions.

Inasmuch as the question of the admissibility of the evidence relating to the character of the bundles of clapboards sawed prior to May 15, but not finished and sorted until after June 13, 1904, will necessarily arise upon the second trial of the case, it becomes the duty of the court to consider the exceptions taken by the defendant to the admission of this evidence at the first trial.

On the fifth day of April, 1904, the defendant agreed to purchase all of the clapboards of certain kinds and dimensions then sawed and all that the plaintiffs might saw at their mill in Sheepscot, Maine, prior to May 15, 1904. It was in evidence at the trial that on the 13th day of June, 1904, the defendant having then hauled away

about forty thousand of the clapboards, refused to take or pay for any more on the ground that the quality was not in accordance with the requirements of the contract. The plaintiffs claimed damages on account of such refusal of the defendant to take and pay for the clapboards finished by them after June 13, but the defendant sought to justify his refusal by evidence tending to show that the clapboards finished and bundled up to the time of such refusal, were not in accordance with the contract. On the other hand for the purpose of showing that the clapboards were in accordance with the contract, the plaintiffs were permitted, subject to objections and exceptions, to introduce testimony as to the quality of the clapboards sawed prior to May 15, but not finished or sorted until after the defendant's refusal to receive any more.

With respect to this evidence and the issue between the parties, the presiding judge instructed the jury as follows: "I propose to submit to you the simple question, whether or not, as to those forty thousand that were finished and sorted and bundled and delivered to Trask and taken by Trask up to and including the 13th day of June, 1904, they were in accordance with the contract as I have explained it. If they were not in accordance with the contract, if this defendant after having entered into this contract on the 5th day of May had taken clapboards delivered by the plaintiffs up to the 13th of June to the extent of forty thousand or thereabouts, and they had not been in accordance with the terms of the contract as written and as I have explained to you, then the defendant had the right to refuse to take any more."

"You have heard all these witnesses, you have heard testimony as to the identity of the various bundles that have been exhibited to you, as to where they came from, testimony upon both sides. And I also permitted testimony as to the character of the bundles that were finished and bundled after the 13th because it might throw some light upon the question, especially if no change had been made in the methods of finishing or sorting, would throw some light upon the question as to the quality of them."

Thus upon the question of fact whether the clapboards as finished sorted and bundled prior to June 13, were in accordance with the

contract, evidence was admitted " as to the character of the bundles that were finished and bundled " after the defendant's refusal on that date to accept any more of them, and the jury were allowed to consider it without proof that "no change had been made in the methods of finishing or sorting." They were instructed that such evidence " might throw some light upon the question especially if no change had been made in the methods " etc. While this instruction emphasizes the importance of the evidence if the methods of sorting had not been changed, it did not exclude it from the consideration of the jury, even if they were satisfied that the methods had been changed. They were authorized to understand that the evidence of subsequent bundling was entitled to more weight if there had been no change in the methods, but even if the methods had been changed, the evidence " might throw some light upon the question of the quality of them " as bundled before that time, and in any event it was to be considered by them.

It appears from the exceptions that the contract provided for the manner in which the clapboards should be dressed, sorted and bundled. These processes necessarily involved the exercise of personal care and skill and judgment on the part of the operators, and the possibility of a design on the part of the plaintiffs to produce results advantageous to themselves, even though at variance with the contract. Assuming, however, that it was practicable, under these circumstances, to show that the manner of " dressing, sorting and bundling " was in all respects the same after June 13, as before, and that there was evidence to warrant the jury in finding that fact and also that the result after June 13, was according to the contract, evidence of such subsequent operations would doubtless have been admitted without objection upon the question in dispute, whether the clapboards received were in accordance with the contract. But in the absence of evidence to establish such identity of process before and after June 13, and to show results according to contract after June 13, evidence of the manner of dressing, sorting and bundling after June 13, could have no legitimate tendency to prove that the clapboards dressed, sorted and bundled before June 13, were in accordance with the contract. It not only fails to meet the ordinary requirement and prac-

tical test of relevancy, but it is obnoxious to some of the rules of what Mr. Wigmore terms "auxiliary probative policy." In attempting to dispute or explain away the evidence thus offered, new issues will arise as to the occurrence of the instances and the similarity of conditions, new witnesses will be needed whose cross-examination and impeachment may lead to further issues; and thus the trial will be unduly prolonged, and the multiplicity of minor issues will be such that the jury will lose sight of the main issue, and the whole evidence will be only a mass of confused data from which it will be difficult to extract the kernel of controversy." 1 Wigmore on Ev. sec. 443, p. 526. "Moreover, the adverse party, having no notice of such a course of evidence, is not prepared to rebut it." 1 Greenl. Ev. sec. 52. It is therefore open to the objections of unfair surprise and confusion of issues.

With respect to the element of personal care involved in the process of sorting and bundling, for aught that appears, the work before June 13, may have been done by negligent and incompetent men, and after June 13, by careful and competent men; but if done by the same men before and after that date, it is a well settled and familiar rule that in cases of negligence the evidence must be confined to the time and place and circumstances of the injury, and the fact that the same person had been guilty of negligence on certain other specified occasions can have no legitimate bearing upon the question of his carefulness or competency at the time in controversy. *Parker* v. *Portland Pub. Co.*, 69 Maine, 173 ; *Maguire* v. *Middlesex R. R. Co.*, 115 Mass. 239 ; *Hatt* v. *Nay*, 144 Mass. 186 ; *Mayhew* v. *Sullivan Mining Company*, 76 Maine, 100.

If any departures from the contract were disclosed by the sorting and bundling before June 13, and they were the result of either negligence or design on the part of the plaintiffs, it might be expected that after complaint from the defendant in regard to the quality of the clapboards and refusal to accept any more, the plaintiffs would endeavor to change their methods in order to make the clapboards conform more nearly to the requirements of the contract, and evidence of the results of such sorting and bundling after June 13, would obviously be of the self serving character uniformly held to be inad-

missible.    This is a branch of the general rule that a man shall not
be allowed to make evidence for himself.    Chamberlayne's Best on
Ev. p. 478.

It is accordingly the opinion of the court that the entry must be

*Plaintiffs' exceptions sustained.*

*Defendant's exceptions sustained.*