WILLIAM E. PERLIN *vs.* MAURICE E. ROSEN.

Cumberland.　　Opinion February 15, 1933.

*Harry E. Nixon,*
*Wilfred A. Hay,* for plaintiff.
*Maurice E. Rosen,* pro se,
*Franklin Fisher,*
*Barnett I. Shur,* for defendant.

Sitting: Pattangall, C. J., Dunn, Sturgis, Barnes, Thaxter, JJ.

Barnes, J. The writ in this case is in assumpsit, plaintiff declaring for money, $1,500, loaned by him to defendant.

The plea denies indebtedness, or any such loan.

In May, 1929, both parties were members of the bar, and practising. They then occupied offices in the same suite, and were more or less closely associated. In particular plaintiff was, with one Berkowitz, administrator of an estate in process of settlement, and defendant advised plaintiff as his counsel.

The defense was that the money was received from plaintiff, not as a loan, to be repaid, but rather as a contribution on the part of plaintiff, and in his own behalf, to make up a sum demanded of plaintiff as administrator, bound to settle his account in his said capacity, in proceedings before the Court of Probate.

Upon trial the jury found for plaintiff for the amount declared; and the appeal is on exceptions to the exclusion of evidence, and on motion for a new trial, on the usual grounds.

As early as the twelfth day of November, 1930, defendant recognized himself indebted to the plaintiff, as administrator, in a sum

that might approach $10,000, and plaintiff was accordingly indebted to the estate.

Pressure was brought to bear on the administrator, and perhaps on both parties, for settlement, and, on November 28, 1930, plaintiff borrowed $1,500 of his father and handed it to defendant.

Of the above there is no dispute.

Trial was before Court and jury. Plaintiff's testimony was brief.

Defendant promptly introduced the details of settlement, under pressure, of the administrator's account before the Probate Court.

From the defendant's testimony it appears that large sums of money of the estate came into his hands, to a total of perhaps $31,000.

Plaintiff's testimony established the presumption that the $1,500 transferred from him to defendant was a loan as charged.

In this situation defendant is entitled to reasonably wide latitude in examination of transactions between him and plaintiff. But not all such transactions are to be examined into. Collateral issues are not to be introduced. Matters for adjudication in the Probate Court were not being tried in the Superior Court. That Court should, in the exercise of wise discretion, eliminate from consideration all matters not relevant to this issue, loan or no loan. If the only bearing of evidence offered is to prove a collateral fact, it is not relevant and should be excluded.

But if any circumstance, which tends to make the premises set up in the pleadings either more or less improbable, is offered in evidence it should be admitted. See *Nickerson* v. *Gould*, 82 Me., 512.

Nine exceptions were argued.

Exceptions one and eight relate to the same point, the admissibility of a document prepared by defendant a fortnight or more before the date of the alleged loan. This document, Exhibit 1, was offered early in the trial and then excluded as not authenticated. At the close of the taking of testimony, it was finally offered and excluded. There is not enough in the bill of exceptions to enable us to determine whether or no defendant was aggrieved by the exclusion, and the exhibit was not brought up. We cannot travel outside the bill to find abuse of discretion; hence this exception fails.

And the same rule applies to the rejection of Exhibit 3, exception No. 7.

Sixteen days after the beginning of attempts to assemble the funds required to balance his account as administrator, plaintiff found it necessary to possess himself of $13,075.90.

At this time, as he said, on November 28, the alleged loan was made, and four days later defendant, in the presence of plaintiff, at a Portland bank turned over securities and cash to the bank, and plaintiff received a certificate of deposit in the above amount.

The theory upon which the defense appears to be based is that the administrator and his counsel each contributed of their funds to make the deposit for which certificate was issued, and that a great part of the $1,500 obtained from plaintiff's father was included in the funds exchanged for the certificate of deposit.

This plaintiff denied, urging that at a time when he was pressing his counsel, it is unreasonable and contrary to human experience that he would put $1,500 or any other sum into the hands of such debtor otherwise than by way of loan.

While being examined on this line, plaintiff was asked a question which we interpret to amount to this: Will you now go over any records or data which you have and tell us what *you* gave for the certificate of deposit.

Exclusion of this question gave rise to exception two.

Pursuing inquiry as to how the consideration for the certificate of deposit was made up, defendant asked plaintiff . . . "if we may assume that some cash went into that certificate of deposit, would it represent something which I owed you or the estate, if it was my cash?

"A. It would show monies due from you to me as administrator of the Zimmerman estate.

"Q. Now, I ask you to show me one single item that I owed you that you have not been paid for, excluding any cash that went into the certificate of deposit?" On objection this question was excluded, and exception three taken.

Further inquiry was as follows, "Now will you tell me what there was that was excluded at the time that the certificate of deposit was given you that you have not received payment for?" Exception four was noted to the exclusion of this question.

The certificate of deposit was purchased to balance the account of the administrators.

Defendant admitted that the shortage was in large part due to his own withholding of money of the estate, but attempted to prove it was in part a shortage of plaintiff's, and that the $1,500 was obtained by plaintiff and turned over to defendant to build up the amount then requisite to meet the demands of the Probate Court.

Tedious as the inspection of books of account, and the identification of checks and their disposition might be, while attempting to prove his exoneration from what might amount to conversion, defendant was entitled to present evidence and to glean from plaintiff such evidence as was within the knowledge of the latter and would tend to prove that a part of the cash which, with checks, made up the amount of the certificate of deposit, was funds of the plaintiff.

The analysis of the problem before him may well have been distasteful to the learned Justice presiding. He was properly watchful to exclude collateral matters that could not do otherwise than uselessly encumber the jury. But in ending the inquiry as evidenced in these three exceptions it appears defendant's rights were unduly abridged.

Exceptions two, three, and four are sustained.

During the course of the trial, defendant offered to prove through a journal of the plaintiff that there had in fact been more money paid by defendant to him than was owed by defendant. Such proof was rejected and exception five is sustained for the same reason as were the three above.

Exception was taken to the exclusion of an exhibit offered by defendant during the direct examination of his former bookkeeper, Miss Wheat. This was defendant's check, dated January 17, 1931, drawn by witness, payable to the firm, Laughlin and Gurney, for the sum of three thousand dollars. Miss Wheat testified that the exhibit was attached to a letter to Mr. Gurney, which, as she recalled the event, was taken by plaintiff to Mr. Gurney.

Subsequently defendant testified as follows: "The hearings in the Probate Court developed shortages on the part of Mr. Perlin. Various matters developed, so it was advisable in the first place for me to get out of the case. I suggested to him that he get Mr. Gurney. He got Mr. Gurney. I went up to see Mr. Gurney; we went up together.

"Mr. Gurney asked for a check as a retainer. I went over it with Mr. Perlin. He didn't have the money and I drew my check for three hundred dollars, and Mr. Gurney subsequently appeared in the Probate Court for Mr. Perlin."

This plaintiff denied. He testified that defendant retained Mr. Gurney to conduct negotiations that led to settlement of the amount of defendant's charges in the probate of the estate, and the record justifies the exclusion of the Gurney check.

But even if not strictly inadmissible, all the facts relative to the check were brought fully into the evidence, and defendant cannot have been hurt by the exclusion of the check.

As to the ninth exception: defendant testified that after several "hearings," in which these parties, with counsel, and counsel for the heirs interested in the estate in probate, participated, terms of settlement were reached.

Defendant testified that he relinquished claim to any fees for legal services and counsel, amounting to "around two thousand dollars"; that plaintiff "waived his commission," and that he, defendant, furnished $2,500 to effect the settlement.

Defendant testified, "we finally reached a settlement, with Mr. Perlin's approval, for twenty-five hundred dollars to be paid in addition to any money received."

His question included a statement that plaintiff, in 1929, collected the proceeds of three mortgages, due to him as administrator; deposited these sums with other interest money, and was finally an inquiry whether or no plaintiff paid interest for the use of such money of the estate.

On objection the question was excluded.

Plaintiff denied any agreement, or reason for agreeing, to participate in paying the twenty-five hundred dollars to the estate.

Defendant contended that large sums belonging to the estate had been in plaintiff's hands for more than a year, and that, in accord with the terms of settlement, the interest on such sums should be credited to him, in case the jury reached the stage of computation.

Cross-examination on this point, to a reasonable degree of thoroughness should have been allowed.

Exceptions two, three, four, five, and nine sustained.

*So ordered.*