CLARENCE F. McCULLY *vs.* EARL D. BESSEY.

Somerset.    Opinion, October 14, 1946.

*Harvey D. Eaton,* for plaintiff.

*Burleigh Martin,*

*Clayton E. Eames,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ.

FELLOWS, J.   This is a trover action to recover the value of 250 cords of pulpwood alleged to have been taken by the defendant. The jury returned a verdict for the plaintiff in the sum of $1,208.12. The case is before the Law Court on general motion for new trial, and also on exceptions to the admission of certain evidence and for refusal to direct a verdict.

The record shows that in May 1943 one Archie M. Kent, by warranty deed, conveyed to Mrs. Leslie Dodge a three years right to cut the wood growing on a tract of land in Benton, Maine. Later, Leslie Dodge arranged to sell some of the wood to Clarence F. McCully, the plaintiff. The wood sold to McCully was soft wood to be cut into pulp for the use of Keyes Fibre Company at Fairfield, Maine, and payments were to be made as the work of cutting was done. Dodge began the work of cutting for McCully; and during the spring and summer of 1943, McCully, without going to see the wood, made payments to Dodge of $4,000. The payments by McCully to Dodge, for wood cut and to be cut, were made as a result of statements of amounts by Dodge. Nothing was done, in 1943, relative to delivery of wood to McCully, or to Keyes Fibre Company, his customer.

In June 1944, the plaintiff McCully and Leslie Dodge met at the Keyes Fibre Company office to arrange for delivery by scaling and marking; and as a result of the conference, McCully and Dodge, with Clifton Gerald and John H. White of the Fibre Company, went to the Kent lot to see the wood. While on the lot, Dodge pointed out the McCully wood. The wood was measured or estimated, by Gerald, the Assistant Superintendent of the Fibre Company, while McCully, Dodge and White marked some

of the wood with a marking hammer. Gerald testified that there were 428.4 cords measured and marked. There was then on the lot other wood that was not marked or measured, because Dodge stated that it belonged to Earl D. Bessey.

It appears that in May 1944 the defendant Bessey also purchased pulpwood from Dodge, which wood was to be delivered to the Hollingsworth and Whitney mill at Winslow, Maine. The defendant, Bessey, received from Mr. and Mrs. Dodge on July 22, 1944 a bill of sale of "all the pulpwood, and without limiting the generality, including 4' lengths and tree lengths, belonging to us, and located on the Archie Kent place" and other lots.

After the scaling of the McCully wood, no wood was received at the mill by McCully or by his Fibre Company customer. The wood that had been marked and measured by McCully disappeared. McCully then sued Dodge to recover the $4,000 he had advanced. Judgment was obtained, but Dodge filed petition in bankruptcy in 1945 and collection was impossible.

At the Dodge bankruptcy hearing on November 23, 1945, this defendant, Bessey, was summoned as a witness and testified that he bought pulpwood for different companies including Hollingsworth and Whitney, that he took a bill of sale from Mr. and Mrs. Dodge of all the wood on the Kent lot and other lots, and later got the wood.

At the trial of this action, however, the defendant Bessey testified that he got no wood other than the wood cut expressly for his customer, and explained his previous testimony by saying that the wood he referred to at the bankruptcy hearing, and that he took from the Kent lot, was only the wood on which he had advanced money for cutting. The defendant also claimed that his wood was cut on another portion of the Kent lot from where the McCully wood was cut; that his wood was cut in 1944 and not in 1943; that he purchased no marked wood; that no wood was received by him or by his customer other than the wood that belonged to him and was cut for him.

The defendant pleaded the general issue with a brief state-

ment denying that plaintiff owned the wood, but the record shows that at the trial the main defense was that neither the defendant, nor the defendant's customers, ever took or received any Mc-Cully wood. No witness for the defense, and many of them worked on the lot, seemed to know what became of the wood marked by or for McCully, or any of it. The evidence of conversion came from the admission of the defendant himself, if he made the admission as plaintiff claims.

## Motion

A general motion for a new trial, is based on the proposition that injustice will plainly be done if the verdict is allowed to stand. It is a motion that asks that the verdict be set aside because it is against the evidence, and the weight of evidence, and that it is against the law, and that the damages are excessive. Under our system, if a jury hears and determines disputed facts, that determination is final, unless so clearly wrong that it is apparent that the verdict was the result of prejudice, bias, passion, or a mistake of law or fact. The Court cannot, and does not, pass upon credibility or number of witnesses. If the evidence in support is substantial, reasonable, coherent, and consistent with circumstances and probabilities, the verdict should stand. The values of conflicting bits of testimony are for the jury, and the burden of showing, to the satisfaction of the Court that the verdict is manifestly wrong, is upon the one seeking to set it aside. *Jannell* v. *Myers*, 124 Me., 229, 127 A., 156; *Marr* v. *Hicks*, 136 Me., 33, 1 A., 2d, 271; *Eaton* v. *Marcelle*, 139 Me., 256, 29 A., 2d, 162.

Here, there was substantial and reasonable evidence for the jury to find, as it must have found, that wood belonging to the plaintiff was on the Kent lot, that the wood was taken by the defendant, and that the value of the wood taken was the verdict. The defendant has failed to satisfy us that the verdict is "manifestly wrong." The motion for new trial, therefore, should not be sustained.

## Exceptions

The first and second exceptions were taken by the defendant during the testimony of Archie Kent, called as a witness for the plaintiff, who was questioned relative to his sale of stumpage to Mrs. Dodge, and how she came to be named grantee in his deed. The witness testified, subject to objection by defendant, "that was the way Mr. Dodge wanted it," "that is what he said." The title of the plaintiff was raised by the defendant's pleadings, and such evidence might become relevant and material to show agency of Mr. Dodge for Mrs. Dodge. *Lunge* v. *Abbott*, 114 Me., 177, 95 A., 942. In any event, it was harmless, and no exception lies unless prejudicial. *Simoneau* v. *Livermore*, 131 Me., 165, 159 A., 853.

The third exception taken during the examination of Manley H. Huff relates to acts of Mr. Dodge in making his first contact with plaintiff McCully. The witness was asked if he took a message from Dodge to McCully that he would like to have McCully call about wood that he had to sell. This testimony, too, bears on agency, but was harmless.

For the fourth exception, the defendant objected to the admission of the bill of sale from Leslie Dodge, and his wife Maud Dodge, to the defendant Earl D. Bessey of all the pulpwood "belonging to us" on the Kent lot. This was material evidence and bearing on the issue of title, as well as conversion.

In exception five the witness Dodge, who with his wife sold the wood to plaintiff McCully, and also apparently sold all or a portion of the same wood to the defendant Bessey, was asked by the defendant to explain what was meant by the phrase in his bill of sale "belonging to us," and whether he intended to sell to Bessey the McCully wood. This was properly excluded. The instrument spoke for itself. *Stevens* v. *Gordon*, 87 Me., 564, 537, 33 A., 27; *Smith* v. *Blake*, 88 Me., 241, 33 A., 992.

The sixth exception, taken while John H. White was testifying for plaintiff in rebuttal, was in reference to the question "Did

you find marks of the Hollingsworth and Whitney Company on the portions left there?" The defendant objected on the ground that it was not rebuttal. The presiding justice permitted the question to rebut defense testimony that the Hollingsworth and Whitney wood was marked, and taken from the lot as fast as marked. It might also tend to contradict the defense that none of the wood, bearing marks by McCully, was ever taken. It is possible to re-mark. This exception is not valid. *Hill* v. *Finnemore*, 132 Me., 459, 172 A., 826.

In regard to each, and all, of the foregoing exceptions, our attention has been called by counsel to no authority to sustain the contentions of the defendant. Most of the objections were that the evidence was immaterial and irrelevant. Relevancy of evidence is dependent on probative value. If it is necessary for the jury to know a certain fact, in order to reach a just conclusion, the evidence bearing on that fact is admissible, unless it is excluded by some rule, or principle of law. Rules of evidence are usually rules of exclusion, and evidence is often admitted, by the trial court, not because it is shown to be competent, but because it is *not* shown to be *incompetent*. The determination of relevancy and materiality must necessarily rest largely in the sound discretion of the presiding justice, as of the time it is offered. We see no force in any of the objections of the defendant to any evidence admitted or excluded.

The seventh exception was to the refusal of the presiding justice to direct a verdict. The same issue is presented by the exception as by the motion for new trial.

In this case, the charge of the justice who presided at the trial, is made a part of the record. It is clear and comprehensive. The claims of the plaintiff and of the defendant are unusually well and fairly stated. The law applicable was properly given. We see no error in the case that demands correction.

*Motion for new trial overruled.*
*Exceptions overruled.*