Mary H. Torrey
*vs.*
Congress Square Hotel Co.

Cumberland.   Opinion, July 22, 1950.

Robert A. Wilson,
I. Edward Cohen, for plaintiff.

Robinson, Richardson & Leddy, for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J. This is an action for alleged negligence tried in the Superior Court for Cumberland County. At the close of the evidence a verdict was directed for the defendant. The case is before the Law Court on plaintiff's exceptions to the granting of the motion for directed verdict, and exceptions to the exclusion of certain testimony offered by the plaintiff.

The defendant company owns the Eastland Hotel in the city of Portland. In the basement of the Eastland Hotel, or on the floor below the street level, there is a cocktail lounge operated by the defendant and known as the "Coral Room." The walls of the room are painted a coral shade with the woodwork painted white. It is a room approximately forty-seven feet long. The floor of the Coral Room is on two levels, one level being twelve inches higher than the other. The "sunken floor" portion of the Coral Room, or the "Pit," is approximately 28 feet long by 21 feet wide, and is located about 18 feet from the entrance to the Coral Room. In other words, one must walk 18 feet on the higher level from the entrance to reach the steps to the "Pit" or "sunken floor" on the lower level. From the upper to the lower level "the first riser is eight inches to a twelve-inch tread, then four inches to the lower floor level." On the day of the accident the entire floor including the steps was cov-

ered with dark green carpeting which had in it a lighter colored floral design. The right-hand wall of the lower level is mirrored and draped to represent windows, although all lighting in this basement cocktail lounge is artificial.

On the lower level there are tables and chairs to the right and left with an aisle between. There are also tables on the upper level. As one enters the room the steps down to the lower level are marked by a short white iron "fence" on the right and left side, each of these "fences" being 43 inches long and 3½ feet high. Immediately in front of these "fences" is a table with two chairs. There is also a column two feet square from floor to ceiling at the outer ends of the "fences."

The upper, or entrance level of this room is lighted by wall lights, the lower level by four chandeliers hanging from the ceiling. There are also small portable lamps for some, if not all, tables. The light in the room is made dim through the use of electric bulbs of small candle power and colored shades. The bar is on the left-hand wall of the room, and on the upper level.

On January 28, 1946 a little after 12:30 P. M. the plaintiff Mary H. Torrey, 69 years of age and a resident of Portland, went with a friend into the Eastland Hotel for lunch. As she entered the hotel, on the street level, she saw a sign indicating the Coral Room to the right and downstairs. They decided to visit the room, as they had never seen it, and they desired to have a cocktail before lunch. The plaintiff, with her friend went down the stairs and turned left at the bottom. She says she then "saw a large door open; and I looked in and stepped in. It was very dimly lighted and I walked into it a ways and I saw the waiter coming this way (indicating) and I walked towards him." She knew him to be a waiter because she saw his white coat. She continued to walk towards the waiter. "Then before he got to me, I caught my right foot, went down a step and turned over and rested on my ankle." Later she testified "it was so dim-

ly lighted I couldn't see much ***** I walked towards the waiter." She says she could see no steps down, as there were no lights there and nothing to indicate or to call attention to where the steps were. The waiter coming from the bar was on the same floor level as plaintiff. "He was going to seat us at a table." There was no hand rail. There was not sufficient lighting and no warning of any kind. She could see no posts in the room. She saw no iron fence upon the right and left side. She could not see the waiter's features but identified him as a waiter by the white coat. "I fell down. One foot went down on the first step, right on my ankle, and then there was another step and I fell forward." Her injuries were serious.

On cross examination the plaintiff said "the place was so dimly lighted you couldn't tell the color of anything," and on redirect she stated that while she was lying on her back after her fall "the room became much lighter than when I came in," which, if true, might indicate that additional lights were then turned on.

One of the witnesses for the plaintiff testified that at the time the plaintiff entered, the light in the room "was very dim," and that "the lights in the Pit were not on." After the plaintiff's fall the lights were turned on. This witness further stated that he saw a waiter start diagonally from the center of the bar towards the plaintiff when she came into the room. The light was so dim that the witness could not see more "than the white of her face" as plaintiff came towards the steps leading to the lower level. The witnesses for the defendant contradicted the witnesses for the plaintiff by insisting that "all the lights were on," and that the room was well lighted although "dim."

## FIRST EXCEPTION

The counsel for the plaintiff asked in direct examination of an orthopedic surgeon, several questions relative to the power of the eye to accommodate itself to different degrees

of light and darkness, and the variations in different individuals. The surgeon had stated that he did not know "too much about the eye." These questions were objected to and excluded. The allegations in the declaration were to the effect that the defendant created and maintained a defective and dangerous trap, particularly "because plaintiff came into the hotel from the brightness of snow-covered ground." The admission or exclusion of these questions from this doctor was discretionary on the part of the presiding justice. We cannot see that there was any abuse of discretion here, because of lack of proper foundation and qualification, and because of the fact that it is common knowledge to every juror that eyes vary with individuals, and all normal eyes adjust themselves somewhat to different degrees of light. In any event, the exclusion was harmless and no exception lies unless prejudicial. *McCully* v. *Bessey*, 142 Me. 209, 49 Atl. (2nd) 230.

## SECOND EXCEPTION

The plaintiff offered evidence tending to show that employees of the defendant had previously reduced the amount of light in the Coral Room, and to show the extent of reduction, a witness employed on January 1, 1946 was asked "were you able to read your checks in the pit?" This was objected to and excluded. Counsel for plaintiff insists that what this employee could do in relation to reading a newspaper or check was material and important. The admission of this evidence was also discretionary and we do not see abuse of discretion. Even if it were proved that light conditions were the same on January 1 as on January 28 there are so many factors involved that evidence in the nature of experiments might not assist the jury. There must be similarity of all conditions. *Baker* v. *Harrington*, 196 Mass. 339; *Eastport Water Co.* v. *Holmes Packing Co.*, 121 Me. 345; 20 American Jurisprudence "Evidence," 627, Sections 755, 756.

## THIRD EXCEPTION

This third exception is similar to the second. The same former employee was asked in substance from his observations after the light was subdued, as one goes into the Coral Room, "what is the appearance?" This was excluded. It was discretionary and the discretion was not abused. "Appearance" embraces too many facts, circumstances, and conditions. How the room "appeared" to this witness might not be the same as it appeared to some other person, and perhaps at some other time and under other conditions.

## FOURTH EXCEPTION

This exception was to the exclusion of a question, asked by counsel for the plaintiff, of a witness who stated that he had entered the Coral Room for the first time in the preceding November. "Whether or not in November when you went to get that wine at the Coral Room, whether or not you fell into the pit?" This was objected to by the counsel for defendant and excluded. Exception was taken. Counsel for the plaintiff stated in his offer of proof that "if we are allowed to pursue the question further, we will show that the reason for this fall was because he could not see the presence of the two steps leading from the upper level to the lower level in that room under the conditions of light then and there obtaining." The presiding justice in excluding the question stated that "it is very dangerous to open the door to collateral issues of other accidents, each one of which may have had its separate causation and which might introduce a whole series of trials involving separate facts, separate questions of contributory negligence and separate conclusions. I do note a dictum of our court in the *Bath Iron Works* case (140 Me. 287). That case appears to have been limited to a situation where a number of workmen doing the same work contracted the disease ***** I prefer to apply the language in the *Portland Publishing Company* case (69 Me. 173) to my ruling here." The presiding justice was correct.

Relevancy and materiality present some of the most difficult phases of the law of evidence. Relevancy is applicability to the issue which has been joined, in order to determine the truth or falsity of the matter in dispute. Legal relevancy generally requires a higher standard than mere logical relevancy. It includes the logical, but demands a close connection between the fact to be proved and the fact offered to prove it. Relevancy does not depend upon the conclusiveness of the testimony offered, but upon its legitimate tendency to establish a controverted fact. Materiality is the capability of properly influencing the result of the trial. Materiality is the important, weighty, essential thing that may vitally affect the determination of a case. In other words, material evidence is important evidence that must be carefully considered in order to fairly decide the merits of a proposition.

"Evidence is incompetent if not fit for the purpose for which it is offered. Irrelevant evidence indicates that kind of incompetence which results from having no just bearing on the issue." *Gray* v. *Railroad*, 114 Me. 530, 532; *Mayhew* v. *Sullivan Mining Co.*, 76 Me. 100; *Nevens* v. *Bulger*, 93 Me. 502, 511; *Parker* v. *Portland Publishing Co.*, 69 Me. 173. "If the only bearing of evidence offered is to prove a collateral fact, it is not relevant and should be excluded." *Perlin* v. *Rosen*, 131 Me. 481, 483; *Damren* v. *Trask*, 102 Me. 39, 46. "Where the ruling is within the discretionary power of presiding justice, and there appears no abuse of such discretion the exception must be overruled." *Grant* v. *Dolley*, 131 Me. 500; *Mayhew* v. *Sullivan Mining Co.*, 76 Me. 100. "Mere immateriality of evidence if admitted is not necessarily error. It may be, if the evidence is mischievous and calculated to mislead the jury." *Dutch* v. *Granite Co.*, 94 Me. 34. "It is not enough for the excepting party to show that excluded evidence was legally admissible. He must show that its exclusion was prejudicial to him." *Pitcher* v. *Webber*, 104 Me. 401.

Both relevancy and materiality depend on probative value. If it is necessary for a jury to know a certain fact in order to reach a just conclusion, the evidence bearing on that fact is admissible, unless it is excluded by some rule or principle of law. Rules of evidence are usually rules of exclusion, and evidence is often admitted by the trial court, not because it is shown to be *competent*, but because it is *not* shown to be *incompetent*. The determination of relevancy and materiality must necessarily rest largely in the sound discretion of the presiding justice as of the time, and under the pleadings, circumstances, and conditions when offered. *McCully* v. *Bessey*, 142 Me. 209; 49 Atl. (2nd) 230; *State* v. *O'Toole*, 118 Me. 314.

Authority for the action of the presiding justice in excluding evidence of the fall of another person at another and previous time is the case of *Parker* v. *Portland Publishing Co.*, 69 Me. 173, where a person fell down an elevator shaft and evidence was erroneously admitted to show the condition of the hallway as to light at other times, together with evidence of what had happened to other men at other times. The opinion states: "It was immaterial to the issue whether, on some particular day or night previous to the plaintiff's injury, the gates to the elevator had been closed or not; whether there had been sufficient light in the hall or not, or whether some individual had or had not been exposed to injury and had escaped. If evidence of this character is receivable, contradictory proofs would be admissible, and there would be as many collateral issues as there were collateral facts and witnesses testifying to them." The opinion in the *Parker* case further states, "the declaration charges negligence by the defendants on a particular occasion and at a particular place, and this the defendants deny. The only issue, therefore, for the determination of the jury was whether there was the negligence charged, on the occasion and at the place alleged, resulting in damage to some amount to the plaintiff." *Parker* v. *Portland Publishing Co.*, 69 Me. 173, 174. See also *Hubbard* v. *Railroad Co.*,

39 Me. 506; *Mayhew* v. *Sullivan Mining Co.,* 76 Me. 100; *Swasey* v. *Railroad Co.,* 112 Me. 399; *Damren* v. *Trask,* 102 Me. 39, 46.

In certain cases, to show capacity or capability, the court has permitted evidence to be introduced of other instances, as in the following: That escaping steam has frightened other horses, in order to show "the action of an inanimate thing upon an animal acting from instinct," *Crocker* v. *McGregor,* 76 Me. 282; other fires at other times, to show "the capacity of the inanimate thing (locomotive) to set fires," *Thatcher* v. *Railroad Co.,* 85 Me. 502; that other horses had been frightened by a hay cap in action for injuries by alleged nuisance, *Lynn* v. *Hooper,* 93 Me. 46; that a red push car was capable of frightening horses, *Mitchell* v. *Railroad,* 123 Me. 176, and evidence of other events, occurring at same approximate time and same conditions, to prove damage traceable to a particular cause (infection or poison from cables), *Spence* v. *Bath Iron Works,* 140 Me. 287, 292.

Facts which all persons of ordinary intelligence are presumed to know, need not be proved. *State* v. *Kelley,* 129 Me. 8. It is a fact of common and universal knowledge that a fall may be occasioned to any individual in many ways, and for many causes, when stepping down to a lower level, whether in darkness or in the light, especially when the step down is totally unknown and unexpected. The questions at issue here are the negligence, if any, of this defendant at this particular time as alleged, and, even if negligent, whether this plaintiff at the time was in the exercise of the care required of the ordinarily careful and prudent person.

There is no merit in this exception to the action of the presiding justice in excluding evidence of a prior accident to a different person at a different time, especially without proof that the individuals were alike in age, intelligence, abilities, and amount of care exercised, and that all the conditions in the room relative to lighting and other circumstances were the same.

## EXCEPTION FIVE

This exception was taken to the directed verdict for the defendant, and involves the question of whether the presiding justice was authorized to do direct for the reason that a contrary verdict could not be sustained by the evidence. We do not think he was so authorized under the record of this case, and this exception must be sustained. The controverted facts should have been decided by the jury. More than one inference can be drawn from the evidence. We can neither say, as a matter of law, that the defendant was or was not negligent, nor can we say, as a matter of law, that the testimony shows due care or the lack of due care on the part of the plaintiff.

The evidence viewed in a manner most favorable to the plaintiff, shows that the plaintiff came at noontime from the daylight of out of doors. She was "invited" by the hotel management to visit and to patronize, as she planned, this cocktail lounge, or Coral Room in the basement. It was a room lighted, when at all lighted, by artificial light. She and the friend with her had never before been in this room. The room was open for patrons, and customers were sitting on the upper level. At the bar, which was at the distant left-hand corner of the large room as the plaintiff came to the entrance, stood the bar tender and waiters. The room was dimly lighted, and the central and far portion of the room, which was on a twelve-inch lower level than at the entrance, may or may not have been then lighted by its lamps or chandeliers. One witness stated that the lights in the "Pit" were not on, and that the room was "very dim." Another witness claimed that "all the lights were on." In any event, the size of bulbs used, the shades, the paint on the walls, the floor carpeting, and the color and arrangement of furniture, made for a subdued light effect.

The burden is on the plaintiff to show that she exercised due care for her own safety under the circumstances. Due

care is the care of the ordinarily careful and prudent person. It is not the care of the most careful person or the most careless, but the care under the circumstances then existing of one who is ordinarily careful and prudent.

The plaintiff endeavored to show, and perhaps a jury would say she did show, that she walked from bright light, as an invitee, into a darkened room, if it was darkened, with an attractive, alluring and enticing interior. She says she saw a waiter, or a person in a white coat, apparently approaching from the distant corner and walked towards him. It was not light enough, she says, to see his features. Did the circumstances warrant the thought, or belief, in the mind of the ordinarily careful person, that this white coat indicated that she should walk ahead to be seated and be waited upon? Did she use ordinary care, in walking forward as she did, towards and to the steps that led down to the lower level? Were there any objects to warn the ordinarily careful and prudent person of danger? Was there light sufficient and so located that she should have seen? Should she have looked at the room or watched the floor? Was there anything that required the plaintiff to shuffle her feet and to test the floor for a rope across her path, or for an excavation made by repairs, or a lower level that might exist with a step or two steps down? Should she have anticipated an abrupt change in level? It is a well-known rule of law that it is not contributory negligence on the part of an invitee in not looking for danger when there is no reason to apprehend any. *Patten* v. *Bartlett,* 111 Me. 409. Was there anything to indicate danger here? Did she have reason to apprehend any? It is not necessary to show a positive act of care if it appears that there is absence of fault. *Guthrie* v. *Railroad,* 81 Me. 572, 580; *McLane* v. *Perkins,* 92 Me. 39, 44. What would the ordinary person who is ordinarily careful have done or refrained from doing? There is evidence enough in this record to warrant a finding by the jury as to whether or not the plaintiff exercised legal care.

There is also sufficient evidence of negligence (or of care) on the part of the defendant, to authorize a favorable or other finding by the jury, depending on what testimony is believed. The evidence conflicts. How was the room constructed and maintained? Was there proper lighting in the room? If insufficient light, or improper light on the lower level, was there under the circumstances, a trap or dangerous condition? It is true that it is not negligence *per se* to have a floor of two levels. *Ware* v. *Evangelical Society,* 181 Mass. 285, 63 N. E. 885; but if there are two levels, and the two levels make a dangerous condition due to improper or insufficient lighting, or lack of proper warning or other circumstance, to protect the invitee who is using the legal care demanded, the jury might find negligence on the part of the defendant company. The defendant company is held to the care of the ordinarily careful and prudent person who invites a customer in for business purposes. The premises must be reasonably safe. The jury must decide whether or not this Coral Rooom used by the public was constructed and maintained with that due care which to an ordinarily prudent man, in view of its purpose, should have been exercised by the defendant to prevent injuries to customers using it. The defendant must not, by any lack of ordinary care, cause injury to the customer who is himself in the exercise of ordinary care.

Where an actor as an invitee was injured by striking a damp spot on the floor, the defendant owed a duty to have the stage free from hidden defects which, by the exercise of reasonable care, could not have been discovered and guarded against. "What may be apparent in the daytime may become a pitfall in the darkness or when the light is dim; and, likewise, a condition obvious to one with an opportunity to investigate, may be a trap to him who is precluded by the nature of his work from making a careful examination." Thaxter, J. in *Franklin* v. *Amusement Co.,* 133 Me. 203, 205. See also *Low* v. *Grand Trunk Ry.,* 72 Me. 313; *Mayhew* v. *Sullivan Mining Co.,* 76 Me. 100; *Camp-*

246

*bell* v. *Portland Sugar Co.,* 62 Me. 552; *Foren* v: *Rodick,* 90 Me. 276.

The action of the presiding justice in directing a verdict for the defendant was error. The facts present questions for determination by a jury.

*Exception sustained.*