**STATE of Maine**

v.

**Phillip GULLIFER, Sr.**

Supreme Judicial Court of Maine.

March 30, 1978.

Joseph M. Jabar (orally), Dist. Atty., Augusta, for plaintiff.

Wathen & Wathen by Daniel E. Wathen (orally), Augusta, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

Phillip Gullifer, Sr. was convicted under three indictments for cheating by false pretenses in violation of the former 17 M.R.S.A. § 1601 (1964). The charges related to a sale of a mortgaged mobile home without notice of the mortgage, a sale of a mortgaged car without notice of the mortgage, and the mortgaging of a car that was already mortgaged. Appellant moved to dismiss the indictments on the ground that under the Uniform Commercial Code there is no longer such a legal institution in Maine as a personal property mortgage. This motion was denied, and appellant now asserts that the trial court erred in not granting the motion. Appellant also asserts that the trial court erred in admitting into evidence certain rebuttal testimony. We deny the appeal.

The court did not err in denying appellant's motion to dismiss the indictment. The ground for the motion was that personal property mortgages were abolished by the statute enacting the Uniform Commercial Code. When the Code was enacted, section 31 of P.L.1963, chapter 362 provided for repeal of the Maine statutes governing mortgages of personal property. However, the repeal provision did not abolish the common law concept of chattel mortgage. The text of 11 M.R.S.A. § 9–102(2) recognizes the continuing existence of personal property mortgages: "This Article applies to security interests created by contract, including pledge, assignment, chattel mortgage . . . other lien or title retention contract . . . intended as security." The UCC comment to that section makes it clear that the Code does not abolish existing security devices. The purpose of Article 9 of the Code is not to abolish the traditional methods of financing but rather to make the legal relationships arising out of a particular security device depend on matters other than the mere legal form of the device. Personal property mortgages still exist in Maine. The court did not err in denying appellant's motion to dismiss.

In his remaining argument on appeal appellant argues that the trial court

erred in admitting the rebuttal testimony of a certain witness. The State introduced evidence at trial specifically to prove the three transactions alleged in the indictment. In addition, the State introduced testimony of five other transactions in an effort to show a common scheme and intent. All eight transactions took place between 1971 and 1974. Appellant took the stand and gave testimony tending to show that the lending banks always knew what he was doing, that the banks were properly secured, and that he dealt with his customers without any criminal intent.

The State questioned appellant about a transaction with Ms. Smith. Appellant testified that Ms. Smith had agreed to buy a house trailer and had signed a conditional sales agreement. According to appellant's testimony, she later became ill and asked appellant to dispose of the trailer for her. Appellant said he sold the trailer without informing the buyer of the Smith mortgage and the payment on the mortgage. Later, appellant gave the following testimony concerning his alleged practice of informing the banks:

"Q [by District Attorney] Let me ask you this question, did you feel that by telling the Bank that you were assuming responsibility . . . .

A I have no secrets from the Bank.

Q And, you told them about the Sylvia Smith incident?

A Sure."

In rebuttal, the State introduced the testimony of Ms. Smith concerning her dealings with appellant. She testified that she had never agreed to buy the trailer and that she had not signed the conditional sales agreement. Appellant's counsel objected to this testimony on the grounds that it was impeachment on a collateral matter. The court overruled the objection, citing as one ground for admitting the testimony its relevancy to the issue of intent.

Ordinarily, a witness cannot be contradicted as to collateral matters brought out on cross-examination. *Finn v. New England Tel. & Tel. Co.*, 101 Me. 279, 64 A. 490 (1906). However, if testimony brought out on cross-examination is relevant to the issue in the case it can be contradicted by rebuttal witnesses. *State v. Kouzounas*, 137 Me. 198, 17 A.2d 147 (1941). The determination of admissibility of rebuttal testimony involves a determination of the relevancy of the contradicted testimony, and such determinations will not be set aside in the absence of an abuse of discretion. *Torrey v. Congress Square Hotel Co.*, 145 Me. 234, 75 A.2d 451 (1950).

The trial court could have determined that Ms. Smith's testimony tended to contradict appellant's assertion that he always kept the banks informed and that he informed them of the Sylvia Smith incident. Appellant's testimony concerning his relationship with the banks related to his intent and was a matter directly in issue in the trial. We cannot conclude that the trial court abused its discretion in admitting the rebuttal testimony.

The entry is:

Appeal denied.

Judgment affirmed.

ARCHIBALD, J., did not sit.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.